[Crim. No. 10070.   Second Dist., Div. Three.   May 25, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. LaVONNE MARIAN GUASTELLA, Defendant and Appellant.

Kate Whyner, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and George J. Roth, Deputy Attorney General, for Plaintiff and Respondent.

KAUS, J.—Appellant was convicted of violating Penal Code, section 476a by making and uttering six checks knowing that at the time she did not have sufficient funds or credit with the various banks on which the checks were drawn.

The dates and amounts of the six checks involved were as follows:

| | |
|---|---|
| January 12, 1962 | $40 |
| January 12, 1962 | $35 |
| March 13, 1963 | $45 |
| March 13, 1963 | $45 |
| March 13, 1963 | $45 |
| August 11, 1963 | $35 |

The three checks of March 13, 1963, were charged in count 1 of the indictment, the other three in count 2.

The victims were various markets and business establishments in the Los Angeles area. There is no need to detail the evidence. Suffice it to say that the evidence admitted, and properly admitted as the law then stood, was amply sufficient to justify the convictions. True, appellant testified to facts which, if accepted, would have constituted a defense. She was apparently not believed.

New concepts force us to review this, as many other records before us, with hindsight.

The only victims who were able to identify appellant as the person who passed the checks were two of those who accepted them on March 13, 1963. As far as the other four checks are concerned, the prosecution relied on an admission by appellant that she had signed the checks, made to Officer Glasgow of the Los Angeles Police Department at the Santa Barbara Sheriff's office. He testified that he had a conversation with the defendant concerning the present charges, that he showed her the checks in question and asked her whether she had written them. She admitted having done so, coupling her admission with certain exculpatory statements, some of which were slightly inconsistent with her later defense. Most of the rest of the conversation, however, was a fairly correct preview of what she later testified to. On the stand she also admitted to being the person who signed the checks. We do not know why she was at the sheriff's office, nor whether she was in custody there, nor, if she was, whether she regained her freedom after the interview. The record does show that Officer Glasgow arrested her on the present charges early in December. The Santa Barbara conversation had taken place on November 25.

The statements made by appellant to Officer Glasgow were mere admissions of one element of the charges against her; however without them the prosecution would not have had a prima facie case on four of the checks. If they were illegally obtained we must disregard the fact that appellant confirmed her admission on the stand. (*Fahy* v. *Connecticut,* 375 U.S. 85 [84 S.Ct. 229, 11 L.Ed.2d 171]; *People* v. *Dixon,* 46 Cal.2d 456 [296 P.2d 557].) Nor can we rely on the possibility that the jury, as was its right under Code of Civil Procedure, section 1944, compared the signatures and found them all to be written by the same person, because neither of the two victims who identified appellant as the person who presented the checks to them, testified that they saw her write them.

The question is whether the statements were improperly admitted. Here we are met with a problem not uncommon in records of cases tried before *Escobedo* v. *Illinois*, 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977]; and *People* v. *Dorado*, 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]. None of the participants at the trial knew that later on the admissibility of incriminating statements made by the defendant would be judged in the light of the four tests laid down in those cases: 1. Had the investigation begun to focus on a particular suspect? 2. Was the suspect in custody? 3. Had the authorities carried out a process of interrogation that lent itself to eliciting incriminating statements? 4. Had the defendant been effectively informed of his right to counsel and of his right to remain silent? *People* v. *Stewart*, 62 Cal.2d 571 [43 Cal. Rptr. 201, 400 P.2d 97], establishes that as far as the last inquiry is concerned, the People must affirmatively show that the defendant had been properly cautioned. The reason for the rule is stated to be that it cannot be assumed that the authorities complied with constitutional principles not yet announced. While this is, of course, true, it is of no help in determining whether or not a point has been reached where the constitutional principles come into play, that is to say whether or not the accusatory stage had been reached.

When the Supreme Court decided *Stewart* and declared that it could not be presumed, on a silent record, that the authorities had complied with a constitutional principle not yet announced, it acted on the overwhelming balance of probabilities. In *Dorado* the court had cited only one single county—Contra Costa—where to its knowledge suspects were already being advised of their right to counsel. (*People* v. *Dorado*, 62 Cal.2d 338, 355, fn. 9 [42 Cal.Rptr. 169, 398 P.2d 361].) We cannot say that there is an equal balance of probabilities that the accusatory stage has been reached, whenever the record is silent on the question, or, as in the present case, incomplete. It is our view that we should not reverse in cases such as this unless the appellant can show from the record that she was entitled to a caution. Only then does the presumption declared in *Stewart* come into play.[1]

---

[1] This does not necessarily mean that appellant is without a remedy if, indeed, the accusatory stage had been reached at the sheriff's office in Santa Barbara on November 25. We must assume that when the Supreme Court declared in *In re Lopez*, 62 Cal.2d 368 [42 Cal.Rptr. 188, 398 P.2d 380] that reversals on the basis of *Escobedo*, where proper, should be ordered in all cases not final before that decision, it intended to give a meaningful right to appellants. There must be dozens of cases tried

Looking at the record before us, we cannot say that it establishes, even prima facie, that the accusatory stage had been reached in Santa Barbara on November 25.

■ We cannot assume, as the Supreme Court did in *Stewart*, that the first requirement—focusing—was met because appellant was apparently in custody. There the defendant had been arrested on the very charge to which his confession related and concerning which suspicion had begun to focus on him. Here we do not know the charge, if any, on which appellant was arrested in Santa Barbara, if indeed she was in custody at all. We do know that she was not arrested by Officer Glasgow for several days.

Granting that probably the course of the interrogation was such that it lent itself to eliciting incriminating statements—it certainly was successful in that respect—we cannot otherwise find any support in the record for the proposition that the accusatory stage had been reached with respect to the charges of which she was subsequently convicted.

There are several elements to a violation of Penal Code, section 476a. (*People* v. *Rush*, 172 Cal.App.2d 431, 435 [341 P.2d 788].) While it is safe to assume that Officer Glasgow was in possession of the six checks in question as a result of complaints made by the victims and was obviously investigating the possibility that a crime or a series of crimes had been committed, there is nothing to indicate that he knew anything except that somebody had uttered six checks which had been dishonored. Appellant had used three different names in cashing the checks, none of them the one under which she was charged, and had used yet a fourth name to open one

before *Escobedo* but not final at that time, where in point of fact the accusatory stage had been reached at the time an incriminating statement was obtained, but the circumstances are not shown in the record, perhaps because there was no doubt as to its voluntariness. The right to raise an *Escobedo* problem is meaningless, if based on a record compiled without knowledge of the rules. The only alternative to wholesale reversals because the accusatory stage *might* have been reached or capricious affirmances because appellants are not fortunate enough to be able to point to evidence indicating that the accusatory stage has been reached which somehow crept into the record, is to give them an opportunity to raise the question by habeas corpus, if they feel they can establish the facts at an adversary hearing conducted with knowledge of the applicable law. The granting of writs in such cases would be entirely in accord with the principles laid down in *In re Lessard*, 62 Cal.2d 497 [42 Cal. Rptr. 583, 399 P.2d 39] and the concurring opinion in *In re Harris*, 56 Cal.2d 879 [16 Cal.Rptr. 889, 366 P.2d 305]. The change in the law between the date of the trial and the consideration of the appeal has the effect of not providing ''an orderly procedure for raising the question of illegally obtained evidence at or before trial and on appeal.'' There is nothing orderly about a trial at which nobody knows what the law is.

of the accounts against which several of the checks were written. We do not know under what name she went at the Santa Barbara sheriff's office. Officer Glasgow may well have wondered whether he was talking to the maker of one or all of the checks. We cannot say that at the time of this conversation suspicion had focused on appellant.

Applying what we believe to be the proper rule on appeal of cases tried before *Escobedo*, we must hold that appellant has not shown that the accusatory stage had been reached.[2]

█ Appellant complains that because of Penal Code, section 654 she may be punished for only one offense, but not for more than one. She is correct in stating that she has standing to raise the matter in spite of the concurrent sentences. (*People* v. *Quinn*, 61 Cal.2d 551, 555-556 [39 Cal.Rptr. 393, 393 P.2d 705]; *People* v. *Nor Woods*, 37 Cal.2d 584, 586 [233 P.2d 897].) We cannot agree, however, with her basic point.

*People* v. *Martin*, 208 Cal.App.2d 867 [25 Cal.Rptr. 610], decided well after *Neal* v. *State of California*, 55 Cal.2d 11 [9 Cal.Rptr. 607, 357 P.2d 839], the leading case interpreting Penal Code, section 654, held that while issuing a check with insufficient funds and grand theft constitute indivisible criminal conduct, the issuing of a series of checks in violation of Penal Code, section 476a involved separate transactions, not subject to the provisions of Penal Code, section 654. Appellant does not quarrel with that holding. Her argument is based upon an extremely subtle theory not advanced in *People* v. *Martin, supra,* for the very good reason that at that time *People* v. *Kennedy*, 210 Cal.App.2d 599 [26 Cal.Rptr. 696], on which appellant relies, had not been decided by this court. In *Kennedy* defendant had issued four checks totaling $85. He was charged in four separate counts under section 476a, found guilty on each count and sentenced to four concurrent state prison terms. It was held that issuance of one or more checks, the total of which does not exceed $50, is not a felony, that the issuance of one check for more than $50, or several checks aggregating more than $50 was a felony and that Kennedy had committed only one felony. Appellant apparently relies on language we employed in *Kennedy* and

---

[2]While this opinion was in preparation by us, Division Two of this court published *People* v. *North*, 233 Cal.App.2d 884 [44 Cal.Rptr. 123]. There it was held that where the record shows focusing, custody and interrogation, but is silent on the question of whether the interrogation was such "that it lends itself to eliciting incriminating statements" it should be presumed that it was of that nature. Our record, on the other hand, is silent on the first two elements, that its to say focusing and custody.

which is set forth in the footnote.[3] Building on this language and particularly the last sentence, together with the suggestion made that in the future the issuance of each check should not be charged in a separate count, it is her point that all the checks should have been charged in one count, thereby making punishment for a single felony her maximum exposure. It is true that, read out of context, the language in *Kennedy* lends some support to her contentions. The case, however, must be read in the light of its own facts. The four checks in *Kennedy* totaled less than $100 and there was no way, except by using one violation to support several counts, the People could have made two felonies out of one. That is the heart of the case. Here any combination of three checks issued by appellant total more than $100.[4] If appellant's theory is correct, once a defendant has passed checks totaling more than $100, he can issue additional checks up to any amount with complete immunity as far as being guilty of more than one count in one prosecution is concerned. While we still adhere to our view that the 1955 amendments to Penal Code, section 476a were designed to guard against excessive punishments for violations of the section, we do not believe that the section was designed to encourage violations by making it a matter of indifference whether a person passes checks totaling $101 or $100,000. It is significant that in

[3]"We can conceive of no tenable theory under which each separate check issued by defendant could be the basis for a charge of felony. Counsel for the defendant pointed out that under the theory of multiple felonies an issuer of 50 checks for $1.00 each would be guilty of a single misdemeanor, whereas if he issued another $1.00 check he would be guilty of 51 felonies. This would, indeed, be a strange situation. In the present case the amounts of the various checks could be juggled into four combinations, each totaling more than $50, for example, checks 1, 2 and 3, checks 1, 2 and 4, etc., but such rationalizing would lead to absurd and impossible results. The reasonable view would be that the offender would have committed a felony when he wrote the check that brought the total to more than $50 and that if he issued another and another, the earlier ones would not be added to the later ones to make multiple felonies." (*Id.*, at p. 601.)

[4]The Attorney General seems to concede that the 1963 amendment to section 476a raising the total amount mentioned in section 476a, subdivision (b) from $50 to $100 is applicable to appellant. We have used the figure of $100 in our discussion because it makes no difference to the disposition of the case. It is noted however that the last check was passed in August of 1963 and that the amendment did not become effective until September 20, 1963. (See *People* v. *Harmon*, 54 Cal.2d 9, 20-27 [4 Cal.Rptr. 161, 351 P.2d 329]; *People* v. *Mitchell*, 27 Cal.2d 678 [166 P.2d 10]; *Sekt* v. *Justice's Court*, 26 Cal.2d 297 [159 P.2d 17, 167 A.L.R. 833]; Gov. Code, § 9608.) Actually appellant could have been charged with three felonies.

*People* v. *Long,* 152 Cal.App.2d 716 [313 P.2d 174] to which *Kennedy* referred as a model, the People did allege three felonies, lumping several checks in each.

It therefore appears that appellant was properly charged in two felony counts and that *People* v. *Martin,* 208 Cal. App.2d 867 [25 Cal.Rptr. 610] is therefore applicable. There was no double punishment.

Nothing we have said is intended to approve or disapprove the practice employed here, of charging the first two checks, in point of time, together with the last one in one count and the third, fourth and fifth checks in another. Appellant does not raise the point, nor was she prejudiced.

No other points raised merit discussion. The denial of probation was strictly a matter of discretion.

The judgment is affirmed.

Shinn, P. J., and Ford, J., concurred.

A petition for a rehearing was denied June 9, 1965, and appellant's petition for a hearing by the Supreme Court was denied July 21, 1965.