[Crim. No. 15501.   Second Dist., Div. One.   Feb. 14, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. RUBEN LOPEZ FLORES, Defendant and Appellant.

---

Donald F. Roeschke, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Rose-Marie Gruenwald, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal by Ruben Lopez Flores from a judgment of conviction of forgery.

In an information filed in Los Angeles on March 13, 1968, appellant with codefendant Dolores Flores was charged in

count I with conspiring to commit forgery on January 13, 1968, in count II with forgery on January 13, 1968, in count III with forgery on January 15, 1968, in count IV with forgery on January 16, 1968, in count V with forgery on January 18, 1968, and in counts VI and VII with forgery on the 22d and 23d of January 1968 respectively. Each defendant represented by separate counsel pleaded not guilty. It was stipulated that the cause be submitted on the testimony contained in the transcript of the proceedings had at the preliminary hearing, each side reserving the right to offer additional evidence. Ruben Flores testified and he was found guilty as charged in counts III and V. All other counts were dismissed. He was sentenced to the state prison, the terms to run concurrently. A notice of appeal was timely filed by Ruben Flores.

A résumé of some of the facts is as follows: Mrs. Carmen Velasquez possessed a Master Charge credit card which expired on December 7, 1967. A renewal card was directed to her address and although she never received the new card (the 1968 card), charges were made against her account in the amount of $7,800 during the latter part of December 1967 and January 1968. Included within such amount was an item of $34.02 on January 15, 1968, for tropical fish and supplies and an item of $45 on January 18, 1968, for dental services. Mrs. Velasquez had given no one permission to use her card or sign her name on the sales drafts representing the transactions of January 15th and 18th. Mrs. Velasquez did not make the purchases in question on the dates indicated. (Count III.) Arnold Davis operated Arnold's Aquaria a tropical fish store in Whittier. On January 13, 1968, defendants purchased some aquarium supplies from Davis and used the Velasquez Master Charge credit card in the transaction. Dolores Flores signed the sales draft with the name Carmen Velasquez. On January 15, 1968, defendants were again present at the store and Ruben selected various tropical fish which were placed in bags and Dolores again signed the name Carmen Velasquez on a Master Charge credit card sales draft in the amount of $34.02. Appellant stood about 2 feet behind Dolores at the time she made the false signature and he thereupon carried out the bags containing the fish and other items which they had purchased. Appellant had driven Dolores to the store, he helped in the selection of the fish which were purchased, and he drove Dolores back to her home with the items so secured. On January 16, 1968, defendants returned again to the store

and purchased some additional supplies and appellant at that time told Davis that the aquarium supplies, etc., were for himself although again Dolores purportedly paid for the items by signing the name Carmen Velasquez to a Master Charge sales draft. (Count V.) Yvonne Oddo was a receptionist to Dr. Klein, a dentist who had an office in Whittier. On five different occasions Dr. Klein performed dental services for appellant who made his appointments under the name of Ruben Velasquez. On January 18, 1968, Dolores was in the dentist's office and said to Miss Oddo, "I came to pay Mr. Velasquez' bill, to pay on his bill." Dolores thereupon signed the name Carmen Velasquez to a Master Charge credit sales draft in the amount of $45. Dolores returned to the office of the dentist on January 22d and 23d and paid $49 and $25 respectively on appellant's account by signing the name of Carmen Velasquez to a Master Charge sales draft. Appellant was not present in the office of the dentist when Dolores signed the sales drafts but he was somewhere in the building. Dolores was married to appellant's brother.

Appellant now asserts that the evidence is insufficient to support the judgment.

It is appropriately stated in *People* v. *Belenger*, 222 Cal.App.2d 159, 163 [34 Cal.Rptr. 918], as follows: "To 'aid' means to supplement the efforts of another or to assist in his acts regardless of any knowledge that the aid is rendered in support of a criminal act. [Citations.] To 'abet,' on the other hand, requires knowledge of the wrongful purpose of the perpetrator and actual participation in the act constituting the offense. [Citation.] To 'aid *and* abet,' therefore, means 'to instigate, encourage, promote or aid with guilty knowledge of the wrongful purpose of the perpetrator.' [Citation.] The logical basis for conviction as an aider and abettor is that with knowledge of the unlawfulness of the act, one renders some independent contribution to the commission of the crime or otherwise makes it more probable that the crime will be successfully completed than would be the case absent such participation. [Citation.]"

Mere presence of a person at the scene of a crime of course is insufficient in itself to show that such person is an aider or abettor. However, " 'The presence of one at the commission of a felony by another is evidence to be considered in determining whether or not he was guilty of aiding and abetting; . . . *presence, companionship, and conduct before and*

*after the offense are circumstances from which one's partici-
pation in the criminal intent may be inferred."* (Italics
added.) (*People* v. *Moore,* 120 Cal.App.2d 303, 306 [260 P.2d
1011], cert. denied May 24, 1954, 347 U.S. 978 [98 L.Ed. 1117,
74 S.Ct. 791]. See also *People* v. *Adams,* 259 Cal.App.2d 109,
115 [66 Cal.Rptr. 161] ; *People* v. *Eskew,* 206 Cal.App.2d 205,
207 [23 Cal.Rptr. 466] ; *People* v. *Ketchum,* 185 Cal.App.2d
615, 619 [8 Cal.Rptr. 607].)

The making of a false statement for the purpose of
warding off suspicion is also receivable evidence to demon-
strate a consciousness of guilt. (See *People* v. *Turner,* 86 Cal.
App.2d 791, 802 [195 P.2d 809] ; *People* v. *Cramer,* 67 Cal.2d
126, 131 [60 Cal.Rptr. 230, 429 P.2d 582] ; *People* v. *Osslo,* 50
Cal.2d 75, 93 [323 P.2d 397].)

It is clear in the record in this case that appellant
knew that Dolores was unemployed during the times the pur-
chases in question were made yet he was unconcerned about
the source of the money which was to pay dental bills totaling
about $100. Further, it was Dolores who told appellant to use
the name other than his own at the dentist's office and appel-
lant was unconcerned about the reason for such a course of
conduct. Every circumstance of the various transactions, each
one quickly following the other, point quite clearly to the fact
that appellant knew full well what was taking place and he
obviously was an active aider and abettor in the crimes.

We review the case as an appellate court and unless it
appears "that upon no hypothesis whatever is there sufficient
substantial evidence to support the conclusion reached in the
court below" this court will not reverse for insufficiency of
the evidence. (See *People* v. *Newland,* 15 Cal.2d 678, 681 [104
P.2d 778].)

The evidence supports the judgment.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.