[Crim. No. 18107. Second Dist., Div. Five. Apr. 20, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
FELIX DAVID NEDER, Defendant and Appellant.

## Counsel

Richard H. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger and Thomas C. Lynch, Attorneys General, William E. James, Assistant Attorney General, and Geoffrey S. Cantrell, Deputy Attorney General, for Plaintiff and Respondent.

## Opinion

**REPPY, J.**—Defendant, Felix David Neder, was charged by information with three counts of forgery (Pen. Code, § 470) and with a prior felony conviction for robbery. Involved were Sears sales invoices for $18.90 (count I), $22.04 (count II), and $44.05 (count III). After a plea of not guilty and submission upon the transcript of the preliminary hearing, defendant was found guilty as charged as to all three counts. He was sentenced to county jail for 180 days on each count, the sentences to run concurrently.

Sears had issued to Miss Vera Gruskin two credit cards. She kept one in her wallet and the other, unsigned, in a jewelry box in her room.

On April 4, 1969, codefendant, Mariquita Dene Fish, accompanied by

defendant, used Gruskin's credit card with Gruskin's name printed on the front and signed on the back to make purchases from three clerks at a Sears store. Codefendant gave Margaret Flores, a clerk, the card to purchase a dress. Mrs. Flores wrote up an invoice sales slip and imprinted the card on it. Codefendant signed the slip. Defendant was with her throughout.

Neal Smith, another clerk, saw defendant and codefendant selecting merchandise. They purchased men's garments, a bush jacket, a high-fashion jacket, and two men's scarves. Codefendant presented the card to Smith, Smith imprinted it upon an invoice sales slip, and codefendant signed the slip. During a lengthy wait for approval of the card by the credit department, defendant spoke about the sale to Smith.

Defendant and codefendant purchased five pairs of men's pants, all the same size, from a third clerk, Carol Whitmore. Mrs. Whitmore showed defendant the parcel and told him the price. Defendant said, "She's the one with the money" (referring to codefendant). Codefendant presented the credit card, Mrs. Whitmore imprinted the card upon an invoice sales slip, and codefendant signed the slip.

Miss Gruskin, after having been advised that someone had been using a Sears credit card of hers, discovered that the credit card she kept in her jewelry box was missing. She identified the card used to make the above sales as hers.

The signature on the back of the card and the signatures on the three invoice sales slips, although stating her name, were not hers. She had not given anyone permission to sign and use her credit card and did not know who had done so.

Defendant contends on appeal that:

1. The evidence was insufficient to support the judgment of conviction.

2. Only one crime was committed and punishment on all three counts was a violation of Penal Code section 654.

3. It was error to prosecute him under Penal Code section 470 as opposed to Penal Code section 484f.

4. His rights were violated by the submission of the cause on the transcript of the preliminary hearing by trial counsel.

5. He was denied adequate representation by counsel.

### I. *Sufficiency of the Evidence.*

Unless it clearly appears that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion below, a judgment of conviction will not be reversed on appeal for insufficiency of the evidence. (*People* v. *Redmond*, 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321].) The evidence in the instant case is sufficient to support a conviction on the theory of aiding and abetting.

To aid and abet means to instigate, encourage or aid with guilty knowledge of the wrongful purpose of the perpetrator. (*People* v. *Flores*, 269 Cal.App.2d 666, 669 [75 Cal.Rptr. 231].) Although mere presence at the commission of a felony by another is insufficient to prove aiding and abetting, presence is evidence for consideration in determining guilt. (*Id.*)

In *People* v. *Flores, supra,* a conviction was sustained where the evidence showed that the defendant, knowing that the codefendant, his sister-in-law, was unemployed, drove her to and from an aquarium supplies store, there selected tropical fish for purchase, stood two feet behind the codefendant as she used a stolen credit card to make the purchases and sign the name of the card owner, carried out the purchases, and later told the store owner that the aquarium supplies purchased were for him.

In the instant case, defendant accompanied codefendant as she made the purchases, and he participated in their selection. Most of the purchases were men's clothing; all of the trousers were the same size. Defendant was with codefendant as she handed the credit card to the clerks and signed Miss Gruskin's name. He talked about the sale with a clerk while waiting for the credit department's approval of the card. Defendant, on one occasion, directed the clerk to codefendant for payment. These circumstances are sufficient to support the inference that the men's garments were being purchased for him and that defendant was well aware of the unlawful means by which the merchandise was being obtained and encouraged and aided codefendant's illegal conduct.

### II. *Three Separate Punishable Offenses Were Committed.*

Defendant contends that the three acts of forgery were part of a single plan and therefore constituted a single offense under *People* v. *Bailey*, 55 Cal.2d 514 [11 Cal.Rptr. 543, 360 P.2d 39]. The import of this contention seems to be that he could properly be convicted of only one, as opposed to three, counts of forgery.

Normally, separate acts, whether violating one or more than one statute, are separate offenses, and it makes no difference that the identical statute is violated with the same victim. (1 Witkin, Cal. Crimes (1963)

Elements of Crime, § 74, p. 76; see *People* v. *Sanders,* 103 Cal.App.2d 200 [229 P.2d 76].)

It has been held that the forgery of several documents at the same time and in the course of one transaction constitutes a separate offense for each instrument. (*People* v. *Gayle,* 202 Cal. 159, 162-163 [259 P. 750] [defendant convicted of six separate forgeries where he forged three checks and three contracts that corresponded to the checks]; *People* v. *Cline,* 79 Cal. App.2d 11, 19-21 [179 P.2d 89] [defendant held guilty of eight separate forgeries where he forged four copies of an affidavit of loss and four copies of an indemnity bond to obtain replacement of one stock certificate].) ▇ There would more clearly be separate offenses here, where each forgery was of a separate sales slip for the purchase of different goods from different sales clerks.

Defendant, however, relies on the doctrine developed in theft whereby several takings may constitute one offense. In cases involving theft (by larceny, false pretenses, or embezzlement), where several takings are motivated by "one intention, one general impulse and one plan," the entire transaction is held to be a single crime. (*People* v. *Bailey,* 55 Cal.2d 514, 518-520 [11 Cal.Rptr. 543, 360 P.2d 39].) Thus, it was held that one offense of grand theft was committed where defendant charged merchandise six times to a fraudulently obtained charge account. (*People* v. *Robertson,* 167 Cal.App.2d 571, 576-577 [334 P.2d 938]. See also Pen. Code, § 484g providing that where charges on a stolen credit card over a six-month period exceed $200, one offense of grand theft is committed; otherwise, the offense is petty theft.)

In the instant case it is probably true that the forgeries were motivated by a preconceived plan to obtain merchandise from Sears by use of Miss Gruskin's credit card and by forging sales slips. However, we do not feel that the *Bailey* doctrine should be extended to forgery. That doctrine was developed for the crime of theft to allow, where there is a common plan, the accumulation of receipts from takings, each less than $200, so that the taker may be prosecuted for grand theft as opposed to several petty thefts.[1] The essential act in all types of theft is taking. If a certain amount of money or property has been taken pursuant to one plan, it is most reasonable to consider the whole plan rather than to differentiate each component part. (See *Dawson* v. *Superior Court,* 138 Cal.App.2d 685, 689 [292 P.2d 574].) ▇ The real essence of the crime of forgery, however, is not concerned with the end, i.e., what is obtained or taken by the forgery;

---

[1] A defendant apparently can also invoke the doctrine to ensure that he be convicted of only one offense. (See disapproval in *People* v. *Bailey, supra,* 55 Cal.2d 514, 519-520, of *People* v. *Scott,* 112 Cal.App.2d 350, 351 [246 P.2d 122].)

it has to do with the means, i.e., the act of signing the name of another with intent to defraud and without authority, or of falsely making a document, or of uttering the document with intent to defraud. Theft pursuant to a plan can be viewed as a large total taking accomplished by smaller takings. It is difficult to apply an analogous concept to forgery. The designation of a series of forgeries as one forgery would be a confusing fiction.[2]

Defendant also relies on Penal Code section 654, as interpreted in *Neal* v. *State of California,* 55 Cal.2d 11 [9 Cal.Rptr. 607, 357 P.2d 839]. That section provides: "An act or omission which is made punishable in different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one."

Although section 654 does not expressly preclude double punishment when an act gives rise to more than one violation of the same Penal Code section, the basic principle it enunciates does. (*Neal* v. *State of California, supra,* 55 Cal.2d 11, 18, fn. 1.)[3]

Section 654 has been applied not only where there has been one act, but also where there has been an indivisible course of conduct. It was held in *Neal, supra,* at page 19, that "[w]hether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one."

Here, it might be said that the offenses were incident to the fundamental objective of taking goods from Sears by use of the credit card and by

[2]The false making and uttering of the same instrument, of course, constitutes but one offense. (*People* v. *Harrold,* 84 Cal. 567 [24 P. 106]; *People* v. *Keene,* 128 Cal. App.2d 520, 526, 527 [275 P.2d 804].)

[3]The *Bailey* issue discussed *supra* concerns the number of offenses committed. Section 654 concerns the propriety of multiple punishment where multiple offenses have been committed and multiple convictions are proper. Where, as in the instant case, there have been several violations of the same statute, the issue can be rationally framed in terms of either the number of offenses committed or the propriety of multiple punishment. We note that in the cases cited in *Neal, supra,* at page 18, footnote 1, for the proposition that the principle of section 654 can preclude double punishment for multiple violations of the code section, the issue is framed in terms of the number of offenses committed. Those cases are *People* v. *Nor Woods,* 37 Cal.2d 584, 586 [233 P.2d 897] (there is one theft where one person has been defrauded of both an automobile and money at the same time and in the same transaction); *People* v. *Roberts,* 40 Cal.2d 483, 491 [254 P.2d 501] (there is one offense, sale of narcotics, where possession and transportation has been incidental to the sale); *People* v. *Clemett,* 208 Cal. 142 [280 P. 681] (there is one offense, operation of a still, where possession and control of the still have been incidental to its operation). The latter two cases are analogous to those holding that the forging and uttering of one instrument is one offense. (*People* v. *Keene,* 128 Cal.App.2d 520, 526-527 [275 P.2d 804].)

forging the sales slips. We feel, however, that this objective is too broad to tie the separate acts into one transaction. The court stated in *Neal, supra,* at page 20: "In *People* v. *Slobodion,* 31 Cal.2d 555, 561-563 . . . we sustained convictions for sex perversion and lewd and lascivious conduct, even though both acts were closely connected in time and a part of the same criminal venture since the act giving rise to the lewd and lascivious conduct was separate and distinct and was not incidental to or the means by which the act of sex perversion was accomplished." (See also *People* v. *Armstrong,* 268 Cal.App.2d 324, 326-327 [74 Cal.Rptr. 37].) Here, each forgery was certainly not a means for the accomplishment of any of the others. Nor was it a means to the immediate end of any of the others. Each act of forgery was committed for the taking of certain goods, separate from and unrelated to the goods taken by the other forgeries. (Compare *People* v. *Rosenberg,* 212 Cal.App.2d 773, 777 [28 Cal.Rptr. 214]; *People* v. *Martin,* 208 Cal.App.2d 867, 877 [25 Cal.Rptr. 610]; and *People* v. *Guastella,* 234 Cal.App.2d 635, 640 [44 Cal.Rptr. 678] [issuing a check with insufficient funds or forging a check, and grand theft of the property received for such insufficient or forged check constitute indivisible criminal conduct].)

It is suggested in Justice Schauer's dissent in *Neal, supra,* at page 25, and in 2 Witkin, California Crimes (1963) Punishment for Crime, section 960, page 913, that *Neal* would have precluded multiple punishment in these two cases: (1) *In re Horowitz,* 33 Cal.2d 534, 541-545 [203 P.2d 513] [preparation by defendant of a false will resulted in four convictions: (a) Penal Code section 134, preparing will with intent to produce it for fraudulent purpose; (b) Penal Code section 470, forgery; (c) Penal Code section 115, filing forged will for probate; and (d) Penal Code section 132, offering will in evidence at probate proceedings]. (2) *People* v. *Cline, supra,* 79 Cal.App.2d 11, 19 [defendant held guilty of eight separate forgeries when he forged four copies of an affidavit and four copies of an indemnity bond to obtain replacement of one lost stock certificate]. In the instant case, however, we have three separate forgeries, each directed to the obtaining of different property and none playing a part in the accomplishment of the end of the others. We do not believe that section 654 should make it a matter of indifference whether defendants, on entering the Sears store with the intention to obtain goods fraudulently by means of forgery, carried out the intention one or three times. (See *People* v. *Guastella, supra,* 234 Cal.App.2d 635, 640-641.)

This differentiating result for forgeries of this type is consonant with an objective "indivisible transaction" criterion not dependent upon the intent and purpose of the actor, toward which the Supreme Court in *People* v.

*Bauer,* 1 Cal.3d 368, 377 [82 Cal.Rptr. 357, 461 P.2d 637], despite a tangential reference to the subjective concept as a test for indivisibility,[4] seems to be pointing.[5] (See concurring opinion of Presiding Justice Kaus in *People* v. *Venegas,* 10 Cal.App.3d 814, 826-828 [89 Cal.Rptr. 103].) In the instant case a technical application of the subjective test leads to the absurd result that if defendant, on entering Sears, intended to acquire all the goods which he and his codefendant could carry away, he can only be punished once. On the other hand, if defendant was an impulse forger, he would be subject to multiple punishments. Applying the objective test here, the most reasonable solution is that the several forgeries did not form an indivisible transaction.

### III. *Prosecution Under Penal Code Section 740 Was Proper.*

■ Defendant contends that the conduct charged was a violation of Penal Code section 484f (forgery of credit card or sales slip) and that, there-fore, it was not subject to prosecution under the general forgery section, Penal Code section 470. As he concedes, this argument was considered and rejected in *People* v. *Liberto,* 274 Cal.App.2d 460 [79 Cal.Rptr. 306]. We agree with *Liberto* that the 1967 enactment,[6] which repealed section 484a, added section 484f, and provided "[t]his act shall not be construed to preclude the applicability of any other provision of the criminal law," expressed a legislative intent to overcome the judicial interpretation there-tofore placed on credit card prosecutions to the effect that a person charged with an offense involving a credit card could not be prosecuted under the general statutes if the People so chose.

### IV. *There Was No Violation of Defendant's Rights in the Submission of His Case on the Preliminary Hearing Transcript.*

■ It is apparent from the record that defendant acquiesced in the

---

[4]"The divisibility of a course of conduct depends upon the intent and objective of the actor. . . ." (P. 376.)

[5]"[W]here a defendant robs his victim in one continuous transaction of several items . . . , punishment for robbery on the basis of the taking of one of the items and [for] other crimes on the basis of the taking of the other items is not permissible.

"The Attorney General urges that the separate sentences for robbery and car theft may be upheld on the theory that the robbery was complete before the theft of the car began [which] was an afterthought. . . . The fact that one crime is technically com-plete before the other commenced does not permit multiple punishment where there is a course of conduct comprising an indivisible transaction. [Citations.] And the fact that one of the crimes may have been an afterthought does not permit multiple pun-ishment where there is an indivisible transaction. [Citation.] The case of *People* v. *Quinn, supra,* 61 Cal.2d 551, 556, . . . is distinguishable. There the car theft . . . was not an indivisible transaction. . . ." (P. 377.)

[6]Statutes 1967, chapter 1395.

stipulation of submission on the preliminary hearing transcript.[7] He relies, however, on *In re Mosley,* 1 Cal.3d 913, 927 [83 Cal.Rptr. 809, 464 P.2d 473], which holds that where a "defendant submits his case on a transcript of the preliminary hearing which under the circumstances can offer him no hope of acquittal, such submission is tantamount to a plea of guilty and must be accompanied by the constitutional and statutory safeguards which such a plea entails," as set forth in *Boykin* v. *Alabama,* 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709]. The stipulation in the instant case was taken on October 15, 1969, subsequent to *Boykin* (June 2, 1969), and prior to *Mosley* (January 30, 1970). It was recently held that *Mosley* should not be applied retroactively to the date of *Boykin,* but should rather be given prospective application only. (*People* v. *Gallegos,* 4 Cal.3d 242 [93 Cal. Rptr. 229, 481 P.2d 237].) Thus, *Mosley* and *Boykin* were not applicable to the stipulation in the instant case. We need not decide whether the stipulation was in fact tantamount to a plea of guilty.

### V. *Defendant Was Not Denied Adequate Representation.*

██ Finally, defendant contends that his trial counsel's submission on the preliminary hearing transcript without any argument to the court regarding the sufficiency of the evidence constituted inadequate representation in violation of the Sixth Amendment.

First, we note that defendant, in court, acquiesced to the submission. Trial counsel's recommendation of the submission cannot be faulted in itself. He may have felt that defendant's chances of acquittal would be better

---

[7]"Mr. Kirste [counsel for defendant]: The Felix David Neder matter is to be submitted, Your Honor. ¶ Mr. Howard [deputy district attorney]: Mr. Felix David Neder, is that your true name? ¶ The Defendant: Yes. ¶ Mr. Howard: You understand you have a constitutional right to a trial by a jury of 12 persons? ¶ The Defendant: Yes. ¶ Mr. Howard: Do you wish to waive and give up that right? ¶ The Defendant: Yes. ¶ Mr. Howard: Does counsel join? ¶ Mr. Kirste: Counsel joins. ¶ Mr. Howard: The People join. ¶ The Court: The waiver is accepted. ¶ Mr. Howard: The People offer to stipulate that the Court may read and consider the transcript of the preliminary hearing in this matter and render a decision thereon; furthermore, all witnesses called, sworn and testified at the preliminary hearing be deemed called, sworn and testified in this court here today in accordance with the testimony set forth in the preliminary hearing transcript; furthermore, all exhibits received in evidence at the preliminary hearing be deemed received in evidence here today bearing the same numbers they bore at the time of the preliminary hearing; furthermore, all stipulations entered into at the preliminary hearing be deemed entered into in this court here today. ¶ Mr. Kirste: Your Honor, we do so stipulate. ¶ The Court: As I understand it, gentlemen, this came down from Department F, and the guilt or innocence is to be determined solely by what is in the transcript? ¶ Mr. Howard: Yes. ¶ The Court: Do you understand that? ¶ The Defendent: Yes, sir. ¶ The Court: There is no additional testimony? ¶ Mr. Kirste: No, Your Honor. ¶ The Court: The Court will accept the stipulation."

on the evidence as it stood than if the prosecution were allowed to introduce more.

Of course, counsel could have argued the significance of the evidence to the court. However, it cannot be said that his failure to do so reduced the trial to a farce or sham. (*People* v. *Ibarra*, 60 Cal.2d 460, 464 [34 Cal. Rptr. 863, 386 P.2d 487].) The sufficiency of the evidence was argued at the preliminary hearing. The trial court stated that it had read the hearing transcript several times. The court could not have overlooked that argument. The transcript was short, and the sufficiency of the evidence was the only issue raised. Moreover, the fact that the trial court fully considered the sufficiency issue is apparent from comments it made when that point was unsuccessfully argued as the ground of a motion for a new trial.

The judgment is affirmed.

Kaus, P. J., and Aiso, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 17, 1971.