[Crim. No. 34300. Second Dist., Div. Five. May 22, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
BARBARA WILLIAMS, Defendant and Appellant.

COUNSEL

Jones & Clark and Carl Jones for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Howard J. Schwab and William R. Pounders, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

ASHBY, J.—

### STATEMENT OF FACTS

Appellant Barbara Williams was charged with 10 counts of welfare fraud in obtaining aid for children by means of false representations (Welf. & Inst. Code, § 11483), and with 13 counts of perjury (Pen. Code, § 118). Appellant pleaded not guilty and waived trial by jury. She was found guilty as charged of all counts, except one which was dismissed because of a clerical error in numbering. After the court denied her motion for new trial and denied her probation, she was sentenced to state prison for the eight-year maximum sentence provided by law.[1] The facts underlying this appeal are as follows:

Over a period of approximately five years, appellant visited different offices of the Department of Social Services in Los Angeles County and

---

[1]Count 2, charging perjury (Pen. Code, § 118), was designated the principal term and 4 other counts of perjury (numbered 6, 10, 14, and 19) were designated to run consecutively. The sentence on all other counts were to run concurrently with the sentence on count 2.

opened at least 10 different cases under aid to families with dependent children. To accomplish this, she used at least nine aliases and at least eight different driver's licenses and identification cards, as well as many false birth certificates. Her claims totaled more than 70 children. As a result, she obtained county warrants which, over the five-year span, total more than $239,000.

Appellant was placed under investigation in December 1975 after welfare employee Jocelyn Mizell discovered that in utilizing different aliases, appellant had submitted birth certificates for the wrong case. Her welfare grant under the name "Barbara Mitchell" was then terminated, after which appellant agreed to return one of the checks the state had given her.

On November 28, 1977, Welfare Investigator Joan Manley of the Department of Public Social Services was assigned to appellant's case. During December 1977 and January 1978, she became aware that some of the children appellant had claimed did not exist.[2] In February 1978, eight of appellant's cases were discontinued, as was another on March 30, 1978. For over six months, from the period of November 1977 to June 1978, Investigator Manley also tried, unsuccessfully, to contact appellant at the addresses listed on her welfare claims, in order to notify her of her right to a hearing and related matters. She sent notices to mailing addresses where welfare payments had been sent and also made telephone calls to the numbers listed on appellant's applications. However, the telephones were either disconnected or persons answering her calls claimed that they did not know appellant. These attempts at communication were made with the intention of notifying appellant of the demand that she make restitution of money fraudulently obtained.

On June 6, 1978, Investigator Manley located appellant's residence and, along with Investigator David Walters of the district attorney's office, attempted to serve a *Ramey* arrest warrant to determine appellant's true identity.[3] Appellant was not at the residence at the time; however, the investigators arrested her husband, Mr. Williams, and advised him that they had demand letters amounting to nearly $240,000. At the husband's request, Investigator Manley delivered the

---

[2]Appellant was also discovered to have other sufficient income.
[3]*People v. Ramey* (1976) 16 Cal.3d 263 [127 Cal.Rptr. 629, 545 P.2d 1333].

letters to appellant's sister, who then gave them to appellant.[4] From June 6 to June 14, 1978, investigators for the district attorney kept a constant surveillance on appellant's home in order to arrest her. Appellant finally surrendered on June 14, 1978, to the Compton Municipal Court.

Prior to appellant's arraignment and in the presence of several investigators from the district attorney's office, Investigator Manley presented copies of demand-for-restitution letters to appellant and asked whether she had received the originals. Appellant acknowledged that she had received them.[5]

## DISCUSSION

■ Appellant first contends that the district attorney's decision to amend the charge of perjury under counts 21 and 23, with regard to the securing of an identification card, required rearraignment and a jury waiver. This contention is without merit.

Rearraignment and a jury waiver are not required where an amendment relates only to minor changes, and thus does not prejudice the substantial rights of the defendant. (Pen. Code, § 1009; *People* v. *McQuiston* (1968) 264 Cal.App.2d 410, 416-417 [70 Cal.Rptr. 531]; *In re Mitchell* (1961) 56 Cal.2d 667, 670 [16 Cal.Rptr. 281, 365 P.2d 177], cert. den., 368 U.S. 997 [7 L.Ed.2d 535, 82 S.Ct. 622].)

The amendment involved here corrected a clerical error, in which an identification card was mistakenly identified as a driver's license in the original complaint and the information. This error was minor, and was corrected by striking the words "driver's license" and replacing them with the words "identification card." No counts were added by the amendment, and the substance of the crime being charged was not changed.

---

[4]On June 7 the investigators attempted to serve a formal complaint and arrest warrant charging appellant with perjury and welfare fraud violations.

As a result of the difficulty in trying to contact appellant, the state and county did not learn her true identity until about the time the search warrant was executed. The information had to be filed against appellant under one of her false names.

[5]Investigator Manley again made a demand for payment of the amounts due the county as indicated in the letters. Appellant's attorney responded that she could not comment on it until he had further knowledge of the case.

Moreover, there is no evidence indicating that appellant's rights were "substantially prejudiced" by this amendment, within the meaning of Penal Code section 1009 or that there was any prejudice to appellant. The testimony adduced at the preliminary hearing and at the trial properly identified this item of evidence as an identification card, and the amendment simply conformed the information and pleadings to the evidence. Appellant was on notice from the beginning that she was charged with perjury in connection with her application for identification cards from the Department of Motor Vehicles. Thus, the court properly denied appellant's motion to dismiss for failure to seek re-arraignment and a jury waiver. (See *In re Mitchell, supra,* 56 Cal.2d at p. 670; *People v. McQuiston, supra,* 264 Cal.App.2d at p. 417; *People v. Graham* (1974) 38 Cal.App.3d 251, 255 [112 Cal.Rptr. 915].)

■ Appellant next contends that the judgment sentencing her to prison on the various counts for which she was convicted violates the statutory prohibition against multiple punishment. (Pen. Code, § 654.) She contends that all counts charged were incident to her one objective of defrauding the County of Los Angeles, and therefore she can only be punished for one count rather than the five counts of perjury which served as a basis for the eight-year prison sentence. This contention is without merit.

Appellant was charged with 13 counts of perjury and 10 counts of welfare fraud, all dealing with separate claims and individuals. These violations were multiple separate offenses and it is not a violation of Penal Code section 654 to ultimately punish her on five perjury counts.

Although her separate actions involved a continuing intent to defraud the government, such an intent constitutes too general an objective to constitute one transaction and preclude punishment for divisible separate offenses. (See *People v. Perez* (1979) 23 Cal.3d 545, 552 [153 Cal.Rptr. 40, 591 P.2d 63]; *People v. James* (1977) 19 Cal.3d 99, 119 [137 Cal.Rptr. 447, 561 P.2d 1135]; *People v. Neder* (1971) 16 Cal. App.3d 846, 851 [94 Cal.Rptr. 364]; *People v. Ashley* (1954) 42 Cal.2d 246, 273 [267 P.2d 271]; *People v. Massie* (1967) 66 Cal.2d 899, 908 [59 Cal.Rptr. 733, 428 P.2d 869].) Similarly, the court in *People v. James, supra,* 19 Cal.3d at page 119, stated, "If the rule were otherwise, a thief who broke into and ransacked every store in a shopping center under one roof, or every apartment in an apartment building, or every room or suite in a hotel, could claim immunity for all but one of

the burglaries thus perpetrated. Nothing in the statute or case law on multiple punishment compels such an incongruous result." (Fn. omitted.)

■ Appellant's final contention is that the People failed to make a demand for restitution prior to bringing criminal action, and therefore are barred from bringing this prosecution (citing *People v. McGee* (1977) 19 Cal.3d 948, 957 [140 Cal.Rptr. 657, 568 P.2d 382]). This contention is meritless.

Pursuant to Welfare and Institutions Code section 11483, the state must "seek restitution" before it can prosecute for welfare fraud. (See *People v. McGee, supra,* 19 Cal.3d at p. 957.) The Legislature intended that this be accomplished by "'request, civil action, or other suitable means. . . .'" (See *People v. Isaac* (1976) 56 Cal.App.3d 679, 682 [128 Cal.Rptr. 872], citing former §§ 12250 & 12850 of Welf. & Inst. Code.)[6] The statutory law and case law do not expressly define the "suitable other means" that are appropriate to obtain restitution. However, they have indicated that the state need only show that an *attempt* was made to obtain restitution of the welfare money. (*People v. Jordan* (1978) 86 Cal.App.3d 529, 534 [150 Cal.Rptr. 334]; citing *People v. McGee, supra,* 19 Cal.3d at p. 964.)

■ The purposes underlying the demand requirement of section 11483 were complied with in this case. The requirement was enacted (1) to insure that enforcement officials make a case-by-case determination of whether the state's interest could be adequately served by obtaining restitution or by also proceeding with criminal prosecution and (2) to protect appellant by permitting her an opportunity to make restitution in cases where there are mitigating circumstances. (*People v. Jordan, supra,* 86 Cal.App.3d at p. 536, citing *People v. McGee, supra,* 19 Cal.3d at p. 965.)

■ The evidence was more than sufficient to support the court's finding that the state substantially complied with the demand requirement of section 11483. Furthermore, appellant admitted to welfare investigators that she had received the letters demanding restitution.

The state did all that it could have done to obtain restitution from appellant, and the decision to proceed with criminal prosecution was

---

[6]The Legislature has incorporated the concluding paragraphs of former sections 12250 and 12850 into section 11483. (See *People v. Isaac, supra,* at p. 682.)

warranted by the facts of this case. As the trial judge said during the hearing on appellant's application for bail pending appeal, "She wanted the very best, and she got it at the expense of every honest taxpayer in this State and this country; a fine $200,000 house with a swimming pool, expensive clothing, fine gold jewelry, a 1977 Cadillac, a 1977 Porsche, and 1975 Mustang. [¶] She's been acknowledged to be the Welfare Queen, having obtained more welfare money than any other recipient fraudulently in the nation's welfare history."

The evidence also supports the court's finding that appellant had ample opportunity to make restitution, and that even as late as the time of her booking she showed no real willingness to do so.[7]

The record is clear that the requirements of Welfare and Institutions Code section 11483 were fully satisfied. (See *People* v. *Jordan, supra*, 86 Cal.App.3d 529, 534-536.) The court did not err.

The judgment is affirmed.

Stephens, Acting P. J., and Hastings, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 23, 1980.

---

[7]From 1972 until the time of the termination of her welfare benefits, appellant had been repaying the county in the amount of $20 a month for two prior fraudulent welfare cases that had been discovered. However, the record shows that what she was really doing during that time was using the money she was currently taking fraudulently from the county to pay back money which she had defrauded the county of in 1972.

During the hearing on the application for bail pending appeal, the trial judge noted that one of the first things appellant did before surrendering on the arrest warrant was to quitclaim her interest in her house in an attempt to avoid making restitution. In addition, she also refused to sign over to the county her interest in her three cars.