166 Cal.App.4th 61 (2008)
In re ARTHUR V., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent,
v.
ARTHUR V., Defendant and Appellant.
No. D052215.
Court of Appeals of California, Fourth District, Division One.
August 21, 2008.
*64 Guillermo Cabrera, under appointment by the Court of Appeal, for Defendant and Appellant.
Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, James D. Dutton and Michael T. Murphy, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION
IRION, J.
The San Diego County District Attorney filed a petition pursuant to Welfare and Institutions Code section 602, alleging that Arthur V., a minor, committed one count of assault by means of force likely to produce great bodily harm (Pen. Code,[1] § 245, subd. (a)(1)) (count 1), one count of assault with a deadly weapon (§ 245, subd. (a)(1)) (count 2), and one count of unlawful and malicious damage and destruction of personal property valued in excess of $400 (§ 594, subds. (a), (b)(1)) (count 3). After an adjudication hearing, the juvenile court dismissed count 2, and found the allegations supporting counts 1 and 3 true beyond a reasonable doubt. The court committed Arthur to a juvenile correctional facility (Camp Barrett) for a period not to exceed 270 days and ordered him to pay restitution.
Arthur appeals, contending that the true finding for felony vandalismthe destruction or damaging of property causing in excess of $400 damagemust be reversed. Arthur argues that the evidence showed that he committed two separate acts of vandalism, each individually resulting in less than $400 damage, and that this evidence supports, at most, two true findings of misdemeanor vandalism (§ 594, subd. (b)(2) [vandalism causing less than $400 damage]). As explained below, Arthur's contention requires us to decide an issue of first impression: whether two misdemeanor acts of vandalism can be aggregated under People v. Bailey (1961) 55 Cal.2d 514 [11 Cal.Rptr. 543, 360 P.2d 39] (Bailey) to form a single felony offense. As we conclude that Bailey is applicable and that, under the principle announced in that case, Arthur's criminal acts permissibly could be aggregated into a single felony offense, we affirm.

FACTS
On October 25, 2007, Khyber Wasimi and R.N. were walking to their car in a parking lot at the Parkway Plaza mall in El Cajon. Arthur, who was in a *65 group of juveniles drinking beer and smoking cigarettes, called Wasimi and R.N. derogatory names, and said "go back to your country." After Wasimi and R.N. got into their car and began to drive out of the mall, Arthur and a number of the other juveniles approached the car. Arthur smashed the windshield of the car with a skateboard, causing $150 worth of damage. When Wasimi got out of the car to confront Arthur, Arthur hit him in the face with the skateboard. R.N. then got out of the car and, after briefly attempting to fight off some of the youths, left to seek out mall security. The other youths began punching Wasimi who, seeing that there were "too many of them" to defend himself, "started running and ... took [his] cell phone out of [his] pocket to call 9-1-1." As Wasimi attempted to run, Arthur kicked him in the back; Wasimi was holding the cell phone in his right hand and the kick caused him to drop the cell phone to the ground. The screen of the cell phone cracked, rendering the phone, which cost $350, inoperable. R.N. and Wasimi were able to summon mall security who, in cooperation with a bystander, detained Arthur. Arthur was subsequently arrested by police.

DISCUSSION[2]
Arthur contends that the trial court was not permitted to aggregate the damage to the phone and the windshield to reach the $400 figure required for a felony vandalism conviction. He asserts, therefore, that the true finding of felony vandalism count must be stricken.
(1) Whether separate instances of misdemeanor vandalism may be aggregated to constitute a single felony offense is a question of first impression under California law. A related question was answered in the context of theft offenses, however, by the California Supreme Court in Bailey, supra, 55 *66 Cal.2d 514. In that case, the court affirmed a felony grand theft conviction (then, requiring theft of property worth more than $200) where the defendant engaged in multiple acts of petty theft, with the aggregate of the petty thefts totaling more than $200. In explaining its conclusion, the court stated: "Whether a series of wrongful acts constitutes a single offense or multiple offenses depends upon the facts of each case, and a defendant may be properly convicted upon separate counts charging grand theft from the same person if the evidence shows that the offenses are separate and distinct and were not committed pursuant to one intention, one general impulse, and one plan." (Bailey, at p. 519.)
Given our high court's pronouncement of this seemingly generally applicable principle of aggregation, we would be faced with the relatively simple task of applying that principle to the instant facts were it not for nearly a half century of case law that has subsequently limited Bailey to cases of theft. (See, e.g., People v. Neder (1971) 16 Cal.App.3d 846, 852 [94 Cal.Rptr. 364] (Neder) [holding that "the Bailey doctrine," which was "developed for the crime of theft," should not be "extended to forgery"]; People v. Drake (1996) 42 Cal.App.4th 592, 597, 595 [49 Cal.Rptr.2d 765] [declining "to extend the Bailey doctrine beyond theft offenses," and holding that the defendant was properly convicted of five separate counts of Medi-Cal fraud based on five acts of false billing]; People v. Washington (1996) 50 Cal.App.4th 568, 575, 577 [57 Cal.Rptr.2d 774] (Washington) [noting that the "test articulated in Bailey has been consistently applied in theft cases," and declining to apply Bailey to crime of burglary because "the difference between theft and burglary makes application of the Bailey rule inappropriate"]; People v. Johnson (2007) 150 Cal.App.4th 1467, 1477 [59 Cal.Rptr.3d 405] [following Washington in rejecting application of Bailey rule to convictions for battery of a cohabitant].)
The question of whether the Bailey doctrine applies to the offense of vandalism was considered, but not resolved, in In re David D. (1997) 52 Cal.App.4th 304 [60 Cal.Rptr.2d 552] (David D.). In that case, a juvenile was charged with felony vandalism based on his application of graffiti (i.e., "tagging") to 34 separate properties in the City of Madera. (Id. at p. 306.) On appeal, the Fifth District considered the Attorney General's request to "extend Bailey to a case of vandalism," while noting that application of the Bailey doctrine "has been limited ... to the crime of theft." (Id. at pp. 308, 309.) Ultimately, however, the court declined to reach the issue, resolving instead that even if the Bailey doctrine applied to vandalism offenses, it did not apply in the particular case. The court reasoned that Bailey "presupposes a single victim," and while the juvenile's vandalism occurred in a single crime spree, *67 "each tagging incident clearly represents a separate offense affecting a different victim." (David D., at pp. 309, 311; but see People v. Columbia Research Corp. (1980) 103 Cal.App.3d Supp. 33, 41 [163 Cal.Rptr. 455] (Columbia Research Corp.) [concluding that multiple thefts from different victims could be accumulated to constitute a single felony offense].)
As summarized above, the modern case law demonstrates a clear trend toward limiting the Bailey doctrine to theft cases. The general import of this limitation is to preclude those convicted of nontheft offenses from receiving a reduction in the number of the convictions sustained for closely related acts. (See, e.g., People v. Kronemyer (1987) 189 Cal.App.3d 314, 364 [234 Cal.Rptr. 442] [applying Bailey rule to reduce four theft convictions to a single conviction]; People v. Brooks (1985) 166 Cal.App.3d 24, 27, 31 [210 Cal.Rptr. 90] [applying Bailey to reduce 14 separate counts of theft to a single count].) The potential harshness of this resultallowing multiple convictions in circumstances that might be viewed as a single crimeis mitigated by the application of section 654, which "limits the punishment for separate offenses committed during a single transaction." (Washington, supra, 50 Cal.App.4th at p. 578, italics added; see § 654 ["in no case shall [an] act or omission be punished under more than one [legal] provision"].) As explained in Washington, even though a thief who reached through an open window twice in an effort to steal a geranium would, under the case law, be subject to two separate burglary convictions, he could only be punished once under section 654. (Washington, at p. 578 [emphasizing that "concern about absurd results" that followed from refusal to apply Bailey doctrine to burglary was mitigated by "section 654, which limits the punishment for separate offenses committed during a single transaction"]; People v. Garcia (1990) 224 Cal.App.3d 297, 307 [273 Cal.Rptr. 666] [emphasizingin affirming four convictions for theft from multiple victims pursuant to a single schemethat under § 654, the defendant would not receive any additional punishment for the multiple counts].)
(2) As explained below, we find the case law that has thus far limited Bailey to the crime of theft distinguishable, and conclude that the rule announced in Bailey applies with equal force to the offense of vandalism.
In our view, the principal analytical distinction to be drawn in applying Bailey is not between theft and nontheft crimes (the rough distinction that has arisen in the case law), but rather between offenses that can be aggregated to create a felony offense, such as petty theft and misdemeanor vandalism, and those that cannot, such as burglary.[3] The Bailey rule, thus, has application *68 whenever, as here, a defendant is charged with a felony offense based on an aggregation of multiple misdemeanor offenses.
The Bailey doctrine was designed to address a dichotomy between grand and petty theft that is directly analogous to the dichotomy between felony and misdemeanor vandalism. (Cf. People v. Slocum (1975) 52 Cal.App.3d 867, 889 [125 Cal.Rptr. 442] (Slocum) ["The Bailey doctrine was developed for the crime of theft to allow, where there is a general plan, the accumulation of receipts from takings, each less than $200, so that the thief may be prosecuted for grand theft as opposed to several petty thefts."].) The offense of vandalism, like that of theft, can be either a felony or misdemeanor depending on the value of property at issue. (See § 487, subd. (a) [defining grand theft as taking of property worth over $400]; § 594, subd. (b)(1) [defining felony vandalism as destruction of property worth over $400]; see also Sangha v. La Barbera (2006) 146 Cal.App.4th 79, 87, fn. 6 [52 Cal.Rptr.3d 640] [distinguishing felony from misdemeanor vandalism].) If, as our Supreme Court held in Bailey, supra, 55 Cal.2d 514, there is properly a legal dividing line between cases where misdemeanor theft offenses can and cannot properly be aggregated to form a felony offense, there can be little dispute that a dividing line that serves the same purpose is appropriate in vandalism cases.
(3) Our conclusion is further reinforced by the fact that there are clearly some instances where separate acts of misdemeanor vandalism cannot be aggregated to form a felony offense. For example, aggregation would be improper where discrete criminal acts are separated by long stretches of time, such as where a defendant tagged a school bus and then, four months later, tagged an unrelated fire hydrant, each time causing $200 worth of damage. (Cf. David D., supra, 52 Cal.App.4th 304.) On the other hand, aggregation is perfectly appropriate in other circumstances, particularly where the same property is victimized, such as where a defendant smashes the window of a car and then slashes its tires. Given that there must, then, be some legal dividing line between these two sets of cases, the only question is the appropriate formulation of that line.[4] In our view, Bailey provides the *69 appropriate dividing line. As with theft offenses, multiple instances of misdemeanor vandalism can be aggregated to form a single felony, unless "the evidence shows that the offenses are separate and distinct and were not committed pursuant to one intention, one general impulse, and one plan." (Bailey, supra, 55 Cal.2d at p. 519.)
(4) Finally, we note that where misdemeanor offenses are aggregated to form a single felony offense, section 654 has no mitigating effect, thus undermining the rationale for the limits that thus far have been placed on Bailey.
Having established that the rule announced in Bailey controls in the instant case, we next must apply that rule. Importantly, in doing so, we emphasize that, at least in the instant context, our task is not to decide de novo whether aggregation is appropriate. As Bailey emphasizes, the question of "[w]hether a series of wrongful acts constitutes a single offense or multiple offenses" requires a fact-specific inquiry that depends on an evaluation of the defendant's intent. (Bailey, supra, 55 Cal.2d at p. 519.) Such an inquiry is appropriately left to the fact finder in the first instance.
As with other such factual questions, reviewing courts will affirm the fact finder's conclusion that the offenses are not "separate and distinct," and were "committed pursuant to one intention, one general impulse, and one plan" so long as that conclusion is supported by substantial evidence. (Bailey, supra, 55 Cal.2d at p. 519; see also Slocum, supra, 52 Cal.App.3d at p. 889 [discussing Bailey principle in terms of requisite jury instruction].) Such substantial evidence exists here.
(5) The damage to the windshield and cell phone occurred within a very brief time period, in the same approximate location, and constituted the victimization of the same person (Wasimi) who had been singled out for abuse by Arthur and his associates. A reasonable fact finder could conclude from these facts that the aggregate damage to Wasimi's car and cell phone did not result from separate and distinct criminal acts, and was inflicted pursuant to a single general impulse, intention or plan. Consequently, we cannot disturb the juvenile court's conclusion that aggregation was appropriate.

*70 DISPOSITION
Affirmed.
Huffman, Acting P. J., and McIntyre, J., concurred.
NOTES
[1] All statutory references are to the Penal Code unless otherwise indicated.
[2] This appeal originally was filed without any argument for reversal pursuant to People v. Wende (1979) 25 Cal.3d 436 [158 Cal.Rptr. 839, 600 P.2d 1071] (Wende). In that submission, Arthur V.'s counsel referred to as possible, but not arguable, issues: (1) whether there was sufficient evidence to support the juvenile court's finding that Arthur committed assault by means of force likely to produce great bodily harm; and (2) whether there was sufficient evidence to support the juvenile court's finding that Arthur maliciously destroyed property worth over $400. We granted Arthur permission to file a brief on his own behalf, but he did not respond.

We reviewed the record pursuant to Wende, supra, 25 Cal.3d 436, and Anders v. California (1967) 386 U.S. 738 [18 L.Ed.2d 493, 87 S.Ct. 1396], including the possible issues referred to by appellate counsel, and requested further briefing on the question of whether the juvenile court was permitted to find that two separate acts of vandalismeach causing less than $400 damageconstituted a single count of felony vandalism of property worth over $400. In that briefing, Arthur's counsel argues that Bailey should not be extended to vandalism, and the felony true finding must be reversed; the Attorney General takes the opposite position.
[3] Support for this position can be found in People v. Hughes (1980) 112 Cal.App.3d 452 [169 Cal.Rptr. 364]. In that case, the First Appellate District suggested that the Bailey doctrine should now "be extended to the crime of forgery," in part, because after the decision in Neder, supra, 16 Cal.App.3d 846, the Legislature created a distinction between the punishments for forgery based on the value of the property fraudulently obtained. (See Hughes, at p. 461, fn. 5; § 12022.6.)
[4] To the extent that David D. can be read to suggest that a workable dividing line can be drawn between cases involving multiple victims and those involving only one victim, we cannot agree because the existence of multiple victims will not necessarily preclude aggregation. For example, an offense consisting of the spray painting of one's name across property owned by multiple persons would clearly be properly aggregated into a single count, despite the presence of multiple victims. Thus, rather than creating some artificial dividing line, "the number of victims involved is only one factor to be considered in determining whether there is one intention, one general impulse, and one plan...." (Columbia Research Corp., supra, 103 Cal.App.3d at p. Supp. 41; cf. David D., supra, 52 Cal.App.4th at p. 309, fn. 3 ["We do not intend to imply ... that the Bailey doctrine can never be appropriate to a theft or thefts from multiple victims."].)