[Crim. No. 1973.  Third Dist.  Oct. 16, 1946.]

THE PEOPLE, Respondent, v. HERBERT POST et al.,
Appellants.

Geo. E. Foote for Appellants.

Robert W. Kenny, Attorney General, and James O. Reavis, Deputy Attorney General, for Respondent.

THOMPSON, J.—The defendants were jointly tried and convicted of grand theft of money and travelers cheques, accomplished by means of a confidence game. Neither defendant was a witness at the trial. A motion for new trial was denied.

The appellants contend that the verdicts and judgment are not supported by the evidence for the asserted reason that there is an absence of proof of an intention to steal the property since the money and cheques were subsequently returned to the owner.

Bert Schulte, the prosecuting witness, is a farmer who resided in Minnesota. He came to California to purchase a ranch. He arrived at Sacramento about noon on February 10, 1946, on a Greyhound bus, and sat down in the station by the side of the defendant Post. The defendants were total strangers to him. Post began to twirl a device consisting of a match and a safety pin, to attract his attention. Post engaged Schulte in conversation, eliciting the information that he had on his person $56 in cash and travelers cheques of the value of $300. The man who sat with Post soon left the waiting room. Post remarked that it was "stuffy" in that room, and suggested that they walk down L Street to see the Capitol. Schulte consented to do so and they left the station together. After they had walked a distance of about one-half block, Post stopped and was talking with Schulte when the codefendant, Bishop, approached and addressed them, saying, "Fellows don't go out this way. I lost twenty dollars last night up there. A lady friend . . . took the $20.00 and beat it." To this remark Post replied, "You mustn't work it that way. You should match; take all or nothing." Bishop said, "I don't know how you mean—'take all or nothing.' " Post explained, "Flip a coin." Bishop replied, "I don't know how to flip a coin." Then Post asked Schulte if he knew how to flip a coin, to which he replied that he had occasionally matched coins to determine who would pay for a cup of coffee. Post said "We will show him how to match." Post produced a 50 cent coin which he held in his closed hand. Schulte said he thought they were merely showing Bishop how to match coins. He did not think they were matching coins for a stake.

If Bishop had a similar coin, Schulte did not see it. Post stood between them. But Post announced to Bishop, "You lost. . . . It will be $200." Schulte saw Post counting a roll of bills, but he did not see Bishop hand them to him. Post then said, "Yes, that is $200." Bishop then addressed Schulte, saying, "Now, you have to pay," to which Schulte replied, "I didn't match for any money." Bishop then said, "If I have to pay that man [Schulte] has to pay too." Post said to Schulte, "Why, you have some cash money? . . . Give it to me and I will give it to you back." Bishop said, "I want to see you pay too first and you [Post] can give it back to him." At the request of Post, Schulte gave him $56 in cash. Post then said, "You have Travelers Cheques," and the witness replied, "Yes, I have six of them." At the further demand of Post, he signed the cheques and handed them to him. The witness testified, "He *made me sign* against the wall." Post put the money and cheques in his pocket and started to walk back toward the Greyhound station. After they had proceeded a short distance, Bishop seized Schulte by the arm and finally grabbed him by the throat and detained him while Post attempted to escape by leaving them and crossing the street. At that juncture a police officer, who was in uniform, and who had been watching them, observed Post in a "very hurried walk across the street," 20 feet in front of him. The officer called to Post, who stopped and the officer accompanied him to the point where Bishop and Schulte stood, and asked them what was going on. Bishop told him "they had a drink and were just arguing a little bit." He then started to walk away, but was stopped by the officer. The three men were taken into the Diamond Club for investigation of the affair. The officer said, "We are going to search you boys now." He took them into a back room for that purpose, and began to ask them questions. In their presence the officer phoned the police station for a car to pick them up. Post then shoved the money and travelers cheques over to Schulte, who took them and put them in his side pocket. The officer observed that act and inquired, "What have you got there?" Schulte told him, and upon request handed the cheques to the officer. The men were soon taken to the police station where the officer examined them regarding the affair. Schulte told his story as previously related. The officer said to him, "Don't you ever wake up? They are taking you for a ride."

514

The foregoing evidence furnishes ample proof of the intention of the defendants to steal the money and travelers cheques. The confidence game by means of which they secured the property from the prosecuting witness was simple and crude, but it was successful. In spite of the fact that Schulte was told that he would get his money and cheques back, and that they were subsequently returned to him after the defendants had been apprehended by a uniformed policeman and he had phoned for a machine to take them to the police station, the jury was warranted in finding that the defendants took the property with the intention of stealing it. The entire story indicates that fact. Schulte had pledged no money or cheques in the matching of coins. He was forced to sign the cheques before delivering them to Post. Bishop deliberately seized and detained Schulte to prevent him from following Post who hastily left them and crossed the street with the property in his possession. Fortunately the alert officer apprehended him and took him into custody. The money and cheques were not returned until the officer phoned in their presence for a car to take them to the police station.

Asportation of the property with the intention to appropriate it is sufficient to constitute larceny even though the property may subsequently be returned to the owner. It is the sole province of the jury to determine from the evidence of the entire transaction the intention with which the property is secured. The fact that a thief is prevented by an officer from getting away with the property, or that he may change his mind and return the property to escape prosecution for the crime, does not relieve him from the consequences of the theft. (*People* v. *Quiel,* 68 Cal.App.2d 674 [157 P.2d 446]; *People* v. *Meyer,* 75 Cal. 383 [17 P. 431]; *People* v. *Dukes,* 16 Cal.App.2d 105 [60 P.2d 197]; 15 Cal.Jur. §§ 11 and 12, p. 905; 144 A.L.R. 1385, note.) Grand theft may be committed when the accused persons, with a preconceived design to obtain and appropriate property by means of fraud or trickery, thereby gain possession of the property, even though they do not retain or use it for their own benefit. (*People* v. *Gatlin,* 75 Cal.App.2d 288 [170 P.2d 1013].)

When the owner is induced by trick or device to part with his money or property without conveying title thereto, and the perpetrator of the fraud thereby obtains possession with the intention of appropriating it to his own use, it constitutes larceny. (*People* v. *McCabe,* 60 Cal.App.2d 492 [141 P.2d 54].)

Clearly the defendants in this case procured the money and cheques from Schulte with the intention of stealing them. They were properly convicted of grand theft.

The judgment and the order are affirmed.

Adams, P. J., and Peek, J., concurred.