[Crim. No. 37353. Second Dist., Div. Five. Dec. 19, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
BETTY JO BUONAURO, Defendant and Appellant.

**COUNSEL**

Alcorn & Hammad and Ron W. Alcorn for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General. S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and Pamela M. Nelson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ASHBY, J.**—Appellant was convicted by jury trial of petty theft with a prior conviction of grand theft (Pen. Code, § 666) and was sentenced to state prison.

On July 28, 1979, Frank Ramos was store manager of the Clark Drug Store in Temple City. He was responsible for running all the operations of the store, including safeguarding store merchandise, but he was not a security officer.

At about 11 a.m. he observed appellant standing behind a counter, where customers were normally not allowed, in the photo department. Expensive items were stored at that display counter and on the shelf behind. Mr. Ramos stepped briefly into a storeroom and when he came back out appellant was gone from the counter. A customer came up to Mr. Ramos and said, "A lady just took two radios from the department and put them in her purse." The customer's description of the lady matched the person Mr. Ramos had seen behind the counter, appellant.

Mr. Ramos immediately went to the checkstand area and closed it off with a shopping cart and chain. He then observed appellant in aisle 16. He approached her and stated, "Will you please come with me to the back room, Ma'am? I would like to see what you have in your purse." Without saying a word, she opened up her purse, took out a store radio, handed or threw it to him, and ran towards the checkstand. At the time appellant had opened her purse, however, Mr. Ramos observed a second store radio.

Mr. Ramos caught up with appellant near the checkstand. He told her she would have to come with him and two female employees to the storeroom. When she refused, Mr. Ramos "advised her she was under citizen's arrest for shoplifting that she will have to go to the back on her own or we will have to force her to the back." The two female employees took appellant by the arms and Mr. Ramos helped push appellant to the back of the store.

At the back of the store Mr. Ramos asked appellant for the other item in her purse and she handed the second radio to him. He asked if she had any money with which to buy the item and she said no. He asked appellant to fill out a form used by the store. She signed the form, giving a false name and address.

A deputy sheriff was summoned. When Deputy Sciarabba arrived, appellant gave him the same false name and address. She stated she had no money with which to purchase the radios but that she had

brought them into the store herself to exchange them. She did not have a receipt. When booked at the sheriff's station, appellant had $1.17 in her possession.

Appellant testified in her own defense. She stated that she came into the store for ice cream and saw the two radios on sale. She put them in her purse intending to buy them. She testified she had $120 in her purse and that the sheriff's booking records were in error. She also had a Master Charge card she could have used. She ran from Mr. Ramos because she was scared. He had come running up to her and grabbed her purse from her.

Appellant contends (1) the evidence is insufficient to support the judgment; (2) the radios and her statements should have been suppressed as fruits of an illegal arrest or search by Mr. Ramos; and (3) appellant's statements to Mr. Ramos should have been suppressed because he did not advise her of her *Miranda* rights. None of these contentions has merit.

■ Appellant attempts to reargue the weight of the evidence, contending that appellant's version of the events should have been believed, namely, that appellant intended to pay for the radios but lost her composure when confronted by Mr. Ramos. The credibility of appellant's explanation was for the jury to determine. (*People* v. *Jaso* (1970) 4 Cal.App.3d 767, 770 [84 Cal.Rpt. 567].) There was substantial evidence justifying a conclusion appellant intended permanently to deprive the owner of the property. (*People* v. *Thompson* (1958) 158 Cal.App.2d 320, 323 [322 P.2d 489].) Appellant was seen behind the counter where customers were normally not allowed. When confronted by Mr. Ramos she handed or threw one of the radios at him, then fled with the other. She gave a false name and address. Her story at the scene, that she brought the radios with her to exchange them, was different from her explanation at trial, that when she saw them on display for sale she decided to buy them. There was conflicting evidence whether she had money with which to buy them. Substantial evidence supports the verdict. (See *People* v. *Johnson* (1980) 26 Cal.3d 557, 575-578 [162 Cal.Rptr. 431, 606 P.2d 738].)[1]

---

[1]There is also no merit to appellant's suggestion that, because she did not leave the store with the merchandise, she was not guilty of theft. (See *People* v. *Khoury* (1980) 108 Cal.App.3d Supp. 1, 3-5 [166 Cal.Rptr. 705]; *People* v. *Thompson, supra,* 158 Cal.App.2d 320, 322-323 [166 Cal.Rptr. 705].)

■ Appellant contends that Mr. Ramos acted unlawfully and that all fruits of his conduct should have been suppressed as evidence. Mr. Ramos did not act unlawfully. After having observed appellant behind the counter where customers were normally not allowed, and then being alerted by another customer that appellant had placed two radios in her purse, Mr. Ramos had a merchant's privilege under Penal Code section 490.5, subdivision (e), to detain appellant for investigation of shoplifting.[2] When Mr. Ramos first approached appellant about this matter, she voluntarily handed or threw one of the radios to him, then fled with the other radio which he observed at that time. Evidence of the first radio was obviously not the product of any illegality.

■ When Mr. Ramos again caught up with appellant near the checkstand, he advised appellant she was under citizen's arrest. (Pen. Code, § 837.) The arrest was valid. A private person may arrest another "for a public offense committed or attempted in his presence." (Pen. Code, § 837, subd. 1.) Appellant committed an offense in the presence of Mr. Ramos when she fled from him with the second radio which he had already seen. When he took her into custody he asked appellant for the other radio and she handed it to him.[3] Thus, evidence of the second radio was not the product of a search or of an unlawful arrest.

Appellant's reliance on *People* v. *Zelinski* (1979) 24 Cal.3d 357 [155 Cal.Rptr. 575, 594 P.2d 1000], is therefore misplaced. In *Zelinski* store security officers arrested a customer for shoplifting, then searched her purse, and removed a pill vial, removed a balloon from the vial, and discovered heroin. (*Id.*, at p. 361.) That search far exceeded the narrow scope of a search for weapons which a private person may make incident to a citizen's arrest. (*Id.*, at p. 363, citing *People* v. *Sandoval*

---

[2]Penal Code section 490.5, subdivision (e), provides in pertinent part: "(1) A merchant may detain a person for a reasonable time for the purpose of conducting an investigation in a reasonable manner whenever the merchant has probable cause to believe the person to be detained is attempting to unlawfully take or has unlawfully taken merchandise from the merchant's premises. [¶] (2) In making the detention a merchant ... may use a reasonable amount of nondeadly force necessary to protect himself and to prevent escape of the person detained or the loss of property. [¶] (3) During the period of detention any items which a merchant ... has reasonable cause to believe are unlawfully taken from the premises of the merchant ... and which are in plain view may be examined by the merchant ... for the purposes of ascertaining the ownership thereof."

[3]The conflicting evidence whether Mr. Ramos seized appellant's purse or she handed the radios to him was resolved against appellant. (*People* v. *West* (1970) 3 Cal.3d 595, 602 [91 Cal.Rptr. 385, 477 P.2d 409].)

(1966) 65 Cal.2d 303, 311, fn. 5 [54 Cal.Rptr. 123, 419 P.2d 187].)
Thus the search in that case was unlawful, and only after resolving that
first issue did the court reach the second issue, whether to make an ex-
ception, in the case of privately employed security police, to the general
rule that the exclusionary rule does not apply to illegal searches by pri-
vate citizens. (*Id.*, at pp. 361-368.)

Here, on the other hand, Mr. Ramos did not exceed his lawful pow-
ers as a merchant and private citizen. According to his testimony, he
did not search appellant or her purse. He did what *Zelinski* says he was
authorized to do, he "demanded the return of the stolen merchandise."
(*Id.*, at p. 367.)[4] The arrest was proper under Penal Code section 837.
Since there was no illegal arrest, it also follows that appellant's state-
ments to Mr. Ramos were not fruits of an illegal arrest. The trial court
properly denied appellant's motion under Penal Code section 1538.5.

■ Finally, appellant contends that her statements to Mr. Ramos
should have been suppressed as evidence on the ground he did not ad-
vise her of her *Miranda* rights. This objection was not raised in the trial
court. ■ This objection is quite distinct from the objection that the
statements were a product of an illegal arrest, and may not be raised
for the first time on appeal. (*In re Willie T.* (1977) 71 Cal.App.3d 345,
349 [39 Cal.Rptr. 439].) ■. Furthermore, a private person ordinari-
ly has no duty to advise a suspect of *Miranda* rights. A duty arises only
when the citizen is acting as the agent of law enforcement officials,
which is not the situation here. (*People v. Mangiefico* (1972) 25 Cal.
App.3d 1041, 1049 [102 Cal.Rtpr. 449]; *In re Eric J.* (1979) 25 Cal.3d
522, 527 [159 Cal.Rptr. 317, 601 P.2d 549].)

■ In any event the existing record poses no *Miranda* violations.
Appellant's statement that she brought the radios into the store to ex-
change them was made spontaneously when Mr. Ramos requested her
to come to the stockroom. Appellant's name and address were routine
pieces of information, and inquiry about them did not require a *Miran-
da* warning. They unexpectedly became incriminatory because appellant
gave a false name and address. Finally, Mr. Ramos' inquiry whether
appellant had money to pay for the goods could well have been to fur-
ther the store's legitimate private purposes rather than to gather

---

[4]Since Mr. Ramos did not act unlawfully we need not discuss the People's contention
that for purposes of the exclusionary rule a store manager should be distinguished from
a store security officer under *Zelinski*.

information for a criminal prosecution. (See *People* v. *Zelinski, supra,* 24 Cal.3d 357, 367.)

The judgment is affirmed.

Kaus, P. J., and Hastings, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 18, 1981.