[No. B112321. Second Dist., Div. One. Sept. 4, 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
JEFFREY ANTWAN SHANNON, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II and III.

650

**COUNSEL**

Sharon Fleming, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, John R. Gorey and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ORTEGA, J.**—Defendant Jeffrey Antwan Shannon appeals from the judgment entered after his conviction by jury of petty theft with a prior. (Pen.

Code, § 666.)[1] The trial court found Shannon had three prior felony convictions under the "Three Strikes" law (§ 667, subds. (b)-(i)), for one of which he served a prison term. (§ 667.5, subd. (b).) Shannon received a 25-year-to-life prison sentence.

The case arose when Shannon went into a department store, took clothes from a rack, hid them in a bag, and took them to a cashier. Falsely claiming ownership of the clothes, Shannon asked to exchange them for a cash refund. Store personnel had seen Shannon hide the clothes and knew he had stolen them from the rack. Nonetheless, the cashier completed the exchange as part of the store's plan to catch Shannon. Security agents arrested Shannon after he left the store with the money.

In the published portion of the opinion (pt. I), we hold that Shannon completed theft by larceny when he dropped the clothes in his bag intending to defraud the store of their value.

In the unpublished portion of the opinion (pt. II), we explore the rule that the store "consented" to the exchange/refund when it gave Shannon the money as part of its plan to catch him, thus vitiating the reliance on Shannon's falsehoods necessary to commit theft by false pretenses or larceny by trick. That rule prohibits one such as Shannon from being convicted of those two completed larceny crimes, but permits him to be convicted of attempted theft by false pretenses or larceny by trick. We call on the Supreme Court to reexamine and jettison that rule, which is based on incorrect legal fictions and leads to absurd results. We also reject Shannon's challenges (pt. III) to the Three Strikes law. We affirm the judgment.

FACTS

On July 11, 1996, Roger Jara, a loss prevention agent at the J. C. Penney store at the Stonewood Mall in Downey, watched Shannon walking around the store. Shannon was carrying a bag which appeared to have two items in it. Jara followed Shannon to the dress department. Jara saw Shannon hold up two skirts and a sweater, undo the clips holding these items to their hangers, and allow the items to fall to the ground, out of Jara's sight. Shannon bent down, picked up the bag, and walked over to the cashier. The bag was now noticeably fuller. Jara checked the area where Shannon had been standing and found three empty hangers.

Lisa Lugo, another loss prevention agent who was monitoring the store's surveillance cameras, also watched Shannon's actions. She agreed the bag

---

[1] All further section references are to the Penal Code.

Shannon was carrying was noticeably fuller after he stood up and walked to the cashier.

When Shannon reached the cashier, he placed the items in his bag on the counter. Jara telephoned the cashier, Maria Mikhailides. In response to Jara's question, Mikhailides confirmed Shannon asked for a cash refund for the items. Jara told her to give him the refund.

When Mikhailides tried to process the refund, a code appeared on the cash register, indicating Shannon had exceeded the refund limit for that time period. She telephoned store security and was authorized to complete the refund. She gave Shannon a $102.83 cash refund. Shannon then left the store. After he did so, Jara placed him under arrest.

In defense, Yamileth Santos, Shannon's fiancée, said that on July 11, 1996, she asked him to return some items for her at the store. Santos had bought these items, including two skirts and a sweater, earlier. Edmundo Santos, Yamileth's father, lent Shannon his automobile that day so defendant could return the items for her.

Shannon urges us to reduce his conviction to attempted petty theft, a misdemeanor (§ 1181, subd. 6), or grant him a new trial. Because we reject this argument, we need not address Shannon's related claim that the trial court erred in not instructing the jury regarding a lesser included crime of attempted petty theft.

DISCUSSION

I

Shannon makes two related arguments why, as a matter of law, he committed only attempted, not completed, theft. First, Shannon argues he could not be convicted of completed theft of the skirts and sweater which he put into his bag and subsequently returned for a cash refund, because he did not remove the clothes from the store. Second, Shannon argues the theft was not completed at that point because he did not intend to permanently deprive the store of the clothes. We reject both arguments.

Theft, of which Shannon was convicted, is the unlawful taking of another's property. (§ 484; *People* v. *Creath* (1995) 31 Cal.App.4th 312, 318 [37 Cal.Rptr.2d 336].) The crime includes larceny, embezzlement, larceny by trick, and theft by false pretenses. (31 Cal.App.4th at p. 318; CALJIC No.

14.00 (6th ed. 1996).[2]) Larceny, larceny by trick, and embezzlement involve taking another's personal property from the owner's possession, without the owner's consent, with the intent to deprive the owner permanently of the property. (*Callan* v. *Superior Court* (1962) 204 Cal.App.2d 652, 667-668 [22 Cal.Rptr. 508]; CALJIC Nos. 14.02, 14.05, 14.07.) Theft by false pretenses does not require that the defendant take the property; it requires that the defendant use false pretenses to induce the other to give the property to him. (CALJIC No. 14.10.)

The jury here was instructed only on larceny. (CALJIC No. 14.41.) The jury was not instructed on larceny by trick, theft by false pretenses, or embezzlement.

" 'The completed crime of larceny—as distinguished from an attempt—requires *asportation* or carrying away, in addition to the taking. [Citations omitted.]' [Citation.] 'The element of asportation is not satisfied unless it is shown that "the goods were severed from the possession or custody of the owner, and in the possession of the thief, though it be but for a moment." ' [Citation.]" (*People* v. *Khoury* (1980) 108 Cal.App.3d Supp. 1, 4 [166 Cal.Rptr. 705].) ▮ However, one need not remove property from the store to be convicted of theft of the property from the store. (*People* v. *Tijerina* (1969) 1 Cal.3d 41, 47 [81 Cal.Rptr. 264, 459 P.2d 680]; *People* v. *Buonauro* (1980) 113 Cal.App.3d 688, 692, fn. 1 [170 Cal.Rptr. 285].) One need only take possession of the property, detaching it from the store shelves or other location, and move it slightly with the intent to deprive the owner of it permanently. (*People* v. *Khoury, supra,* 108 Cal.App.3d at pp. Supp. 4-5 [affirming completed theft conviction, and rejecting claim that it was only at attempt, where Khoury hid $900 worth of merchandise in a chandelier box, took it to the checkstand, and tried to pay only the much lower price marked on the box, but the salesclerk became suspicious and refused the sale, whereupon Khoury abandoned the box and its contents, walked away from the counter, and was arrested inside the store].) Indeed, the standard jury instruction defining theft by larceny states: "To constitute a 'carrying away,' the property need not be actually removed from the [place] [or] premises where it was kept . . . ." (CALJIC No. 14.02.) Thus, Shannon's claim that he could not be guilty of completed theft unless he took the clothes outside the store is wrong.

On facts identical to Shannon's, a recent case adopts a contrary position without citation to authority or analysis. (*People* v. *Ingram\** (Cal.App.)) A loss prevention agent watched Ingram take a pair of pants off a rack, go to

---

[2]All further CALJIC references are to the 6th edition (1996).

\*Reporter's Note: Review granted on October 14, 1998 (S072712). On January 27, 1999, review dismissed and cause remanded to Court of Appeal, Fourth Appellate District, Division One.

the refund counter, and remove the price tag when the clerk turned away. The agent telephoned the refund clerk and told her to process any return/refund Ingram attempted. The agent stood nearby and overheard Ingram say he received the pants as a gift. Ingram disputed the clerk's price quote for the pants, claiming they sold for more. The clerk completed the refund and gave Ingram the money. Ingram was arrested as he walked away from the counter. Convicted of completed theft with a prior and commercial burglary, Ingram was sentenced under the Three Strikes law. The appellate court reversed the theft conviction, but refused to modify it to attempted theft, which it concluded Ingram committed, because the jury was not offered that alternative. The reversal did not affect Ingram's sentence because the appellate court simply lifted a previously granted section 654 stay on the 25-year-to-life burglary sentence.

As noted, on this issue *Ingram* took a contrary position without citation to authority or analysis: "[W]e address the theory—propounded by the trial court and adopted by the prosecution—that Ingram's actions amounted to larceny because he had the intent to either steal money by getting a refund or steal the pants if the cash return was denied. We consider this theory even though it is somewhat speculative with respect to Ingram's state of mind. In any event, there was insufficient evidence to support a larceny conviction under this theory, because Ingram did not walk away with the pants. In other words, the crime of stealing the pants was not completed; at most, the court's hypothesis would support an attempted theft by larceny. [¶] In sum, the evidence was insufficient to support the theft charge on theories of common law larceny, larceny by trick or device, or theft by false pretenses." (*People* v. *Ingram*,* *supra*.)[3]

Without doubt, *Ingram* is simply wrong, factually and legally, on this issue, by stating Ingram had to "walk away with the pants" to complete the theft. (*People* v. *Ingram, supra*, 65 Cal.App.4th at p. 509.) To the extent the quoted phrase suggests there was no movement at all, and thus a complete proof failure on the asportation requirement, it is factually incorrect. Ingram *did* walk away with the pants after taking them from the rack, hiding them in his bag, and removing the price tag. He walked over to the exchange counter with them. To the extent the phrase suggests Ingram had to get the pants out of the store to complete the theft, it is legally wrong. As discussed above, one need not leave the store, or escape, to complete the theft; *any* movement with the requisite intent does so. The theft was complete when Ingram put

---

*See Reporter's Note, *ante*, at page 654.

[3]The *Ingram* prosecutor originally proceeded on a theft by false pretenses theory. When the trial court indicated it would grant Ingram's section 1118.1 motion on that theory because the store "consented" to giving Ingram the money, the trial court suggested and the prosecutor adopted a larceny theory that the theft was complete when Ingram moved the pants with the intent to steal either the money from a false refund or the clothes. (*People* v. *Ingram*,* *supra*.) *Ingram* does not divulge the instructions given its jury.

the pants in the bag with the intent to deprive the store of their value. Likewise, in our case, the theft was complete when Shannon put the clothes in his bag with the intent to fraudulently obtain money for them by falsely exchanging them for their monetary value. This conclusion alone compels affirmance.

Shannon then makes a related point: The theft was not complete when he took the clothes because he did not intend to permanently deprive the store *of the clothes*, but only intended to take *the money* he would receive from the false refund. *Ingram* did not address this point, which we reject. ■ As the jury was instructed, theft requires the specific intent to permanently deprive the owner of its property. (CALJIC No. 14.41; accord, *Callan* v. *Superior Court, supra*, 204 Cal.App.2d at p. 667.) However, the intent to later restore or make restitution for the property is no defense. (*People* v. *Costello* (1951) 107 Cal.App.2d 514, 518 [237 P.2d 281].) Likewise, "the property need not . . . be retained by the perpetrator." (CALJIC No. 14.02.) "Asportation of the property with the intention to appropriate it is sufficient to constitute larceny even though the property may subsequently be returned to the owner. . . . The fact that a thief is prevented by an officer from getting away with the property, or that he may change his mind and return the property to escape prosecution for the crime, does not relieve him from the consequences of the theft. [Citations.] . . . [T]heft may be committed when the accused persons, with a preconceived design to obtain and appropriate property by means of fraud or trickery, thereby gain possession of the property, even though they do not retain or use it for their own benefit. [Citation.]" (*People* v. *Post* (1946) 76 Cal.App.2d 511, 514 [173 P.2d 48].) Moreover, the prosecution need not show the defendant took the property for his own use; the intent to destroy it and thus deprive the owner of its use is sufficient. (2 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Crimes Against Property, § 587, p. 663.)

■ Thus, the fact that Shannon apparently did not intend to keep the clothes, but to steal its monetary value by exchanging the clothes while falsely claiming to own them, does not alter our conclusion that the theft was complete when he put the clothes in his bag with the described intent. Shannon unquestionably intended to permanently deprive the store of money equal to the clothes' value, and thus to "use [them] for [his] own benefit." (*People* v. *Post, supra*, 76 Cal.App.2d at p. 514.) There is no evidence that had Shannon been unable to complete the fraudulent refund, he would have abandoned the stolen clothes rather than leaving the store with them.

In any event, even if Shannon intended to abandon the clothes if his scheme failed, the theft was complete when he dropped the clothes into his

bag intending to defraud the store of their monetary value. The fact that Shannon planned to get the money from the store, rather than taking the clothes and selling them to a fence or an innocent buyer, or trading them for drugs, or any of the other myriad ways in which he could have appropriated their value other than by wearing them, is irrelevant. Unlike a joyrider, who plans to use the car temporarily and then return it, Shannon intended not to *unconditionally* return the clothes, but to *appropriate* them for his purpose of *selling* them back. ▮ "One who takes another's property intending at the time he takes it to use it temporarily and then to return it *unconditionally* within a reasonable time—and having a substantial ability to do so—lacks the intent to steal required for larceny." (2 LaFave & Scott, Substantive Criminal Law (1986) Crimes Relating to Property, § 8.5(b), p. 359, italics added, fn. omitted.) Put another way, "[t]he intent to steal is an intent to deprive the possessor permanently. One who takes another's property for temporary use or concealment, with the intention of returning it, is liable in tort for damages but is not guilty of larceny. [Citations.]" (2 Witkin & Epstein, Cal. Criminal Law, *supra*, Crimes Against Property, § 585, p. 661.)

In support, both texts cite *People* v. *Brown* (1894) 105 Cal. 66 [38 P. 518], which reversed a burglary conviction based on incorrect jury instructions. Brown admitted entering, intending to take his landlord's son's bicycle "to get even with the boy" for an earlier quarrel. (*Id.* at p. 68.) Brown intended to return the bicycle unconditionally within a day. However, by mistake Brown took another's bicycle. Brown was caught before he could return the bicycle. The court ordered a new trial because the jury instruction stated the taking did not have to be with the intent to permanently deprive.

▮ Shannon, of course, did not intend to return the store's property unconditionally. Instead, he intended to sell the store's own property, which he took with wrongful intent, back to it, falsely claiming to be the rightful owner. Thus, Shannon neither lacked wrongful intent nor intended to return the clothes unconditionally and cannot benefit from this defense.

In *People* v. *Stay* (1971) 19 Cal.App.3d 166 [96 Cal.Rptr. 651], the defendant's employees picked up retail store shopping carts, each marked with the owning store's identification, which patrons used to take their purchases home and then left on the streets surrounding the stores. Stay then contacted the stores and offered to return each store's carts for $2.50 each, although other legitimate companies returned the carts for 25 cents each. A few of the stores complied with Stay's ransom demands, while most did not. Stay removed the names and numbers from the carts he could not sell back to their owners' stores and then sold the relabeled carts to other stores. Stay was convicted of five counts of completed grand theft, some from stores that

paid him for their returned carts, some from stores that refused to pay and whose carts he resold after altering them. We affirmed.

First, we rejected Stay's claim that, like the legitimate companies described above, he was acting under a statute which entitled those who returned shopping carts to their owners " 'without compensation' " to receive " 'a reasonable charge for saving and taking care of the property[,]' " and thus was not guilty of theft or attempted theft. (*People* v. *Stay, supra,* 19 Cal.App.3d at p. 171, fn. 3; *id.* at pp. 171-175.) Second, and dispositive of this issue, we rejected Stay's argument that he did not commit theft because he did not intend to deprive the stores of their carts permanently. In doing so, we did not distinguish between those stores that paid the ransom and got their carts back, and those that refused and never got them back because Stay sold them to others. Thus, although Stay never intended to keep the carts, but stole them intending to ransom them back to their owners or, failing that, sell them to others, we affirmed his completed theft convictions. (*Id.* at pp. 175-176.)

Although the scheme here is different, the result is the same. In neither case does it matter that the thief intends to sell the victim's property back to the victim after wrongfully stealing the property and claiming to be the rightful owner, thus ultimately stealing the victim's money rather than the property. Shannon completed the theft when he moved the clothes, thus appropriating them and intending to fraudulently resell them to the store. On this basis, the evidence supports Shannon's larceny conviction.

## II, III*

. . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

We affirm the judgment.

Spencer, P. J., and Masterson, J., concurred.

A petition for a rehearing was denied September 16, 1998, and appellant's petition for review by the Supreme Court was denied December 16, 1998.

---

*See footnote, *ante,* page 649.