Filed 11/16/20  P. v. Kruckenberg CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

|  |  |
|---|---|
| THE PEOPLE, | C089917 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF18-7107) |
| v. | |
| DUSTIN JAY KRUCKENBERG et al., | |
| Defendants and Appellants. | |

In the course of a week, defendants Dustin Jay Kruckenberg and Edward Phillip Farris committed three thefts from the same store, and a jury found them guilty of grand theft.  On appeal, Farris contends:  (1) as to the theft that would alone support a grand theft conviction based on the value of the property taken, there was not substantial evidence they took property with the specific intent to deprive the owner of possession; (2) there was insufficient evidence to find a common plan or scheme so as to permit aggregation of the value of the property taken in the three thefts; and (3) the trial court erred in instructing the jury it could aggregate the value of multiple thefts to reach the felony threshold.  Both Kruckenberg and Farris contend their prior prison term

1

enhancements should be stricken.  In supplemental briefing, Kruckenberg also contends the matter should be remanded for an ability to pay hearing on fines and assessments. We conclude that defendants' prior prison term enhancements must be stricken, and that Kruckenberg's case must be remanded for resentencing.  In all other respects, we affirm the judgment.

BACKGROUND

On July 30, 2018, Kruckenberg and Farris went to a Target store in Davis.  Video surveillance showed Kruckenberg pushing a shopping cart through the store and Farris walking next to him.  Kruckenberg put an air mattress and vacuum cleaner in the cart, while Farris added another vacuum cleaner and two tents.  Kruckenberg pushed the cart past the café and out of the store, bypassing the checkout area.  Farris left the store with no merchandise.  The value of the merchandise taken was approximately $579.95.

On the morning of August 5, 2018, video surveillance showed Kruckenberg pushing a shopping cart through the same Target store with Farris at his side. Kruckenberg put a toaster oven and vacuum cleaner in the cart, to which Farris added a second vacuum cleaner.  Kruckenberg again pushed the cart past the café and left the store.  Farris again left the store with no merchandise.  The approximate value of the merchandise taken was $599.97.

Later that same day, Kruckenberg and Farris returned to the store.  Kruckenberg pushed the cart with Farris next to him.  Aaron Demar, a loss prevention officer, saw Kruckenberg pushing a cart full of merchandise near the café, past the checkout area. Farris was standing near the checkout area.  Demar approached Kruckenberg about 10 feet from the exit and asked for his receipt.  Kruckenberg said he was still shopping. Kruckenberg then pushed the cart into the women's department, abandoned it, and he and Farris left the store.  Inside the cart was a vacuum cleaner, a fan, and a digital air fryer, the approximate value of which was $979.97.

2

Demar did not detain Kruckenberg because store policy is to apprehend the person only after they have left the store with merchandise. Demar also acknowledged sometimes customers go to the café before they finish shopping, but noted Kruckenberg was near the exit with the cart aimed toward the door.

PROCEDURAL HISTORY

A jury found both defendants guilty of grand theft exceeding $950 (Pen. Code, §§ 484, subd. (a), 487, subd. (a)).[1] In bifurcated proceedings, the trial court found true the allegations that each defendant had served two prior prison terms (§ 667.5, subd. (b)) and each sustained a prior strike conviction (§ 667, subds. (c) & (e)(1)). It sentenced Farris to an aggregate term of eight years: the upper term of three years, doubled for the strike, plus two consecutive one-year terms for the prior prison term enhancements. The trial court sentenced Kruckenberg to an aggregate term of four years eight months: the lower term of 16 months, doubled for the strike, plus two consecutive one-year terms for the prior prison term enhancements. As to both defendants, the trial court imposed a $30 criminal conviction assessment (Gov. Code, § 70373), a $40 court operations assessment (§ 1465.8), a $300 restitution fine (§ 1202.4), and an identical parole revocation restitution fine, suspended unless parole is revoked (§ 1202.45). The trial court also ordered defendants to pay direct victim restitution to Target in the amount of $1,504.91.

DISCUSSION

I

*Substantial Evidence*

Farris contends that substantial evidence does not support his conviction for grand theft. Specifically, he argues there is insufficient evidence of a taking with the requisite intent as to the third incident, in which the value of the merchandise was over $950. He

---

[1]     Undesignated statutory references are to the Penal Code.

3

further argues that there is insufficient evidence of an overarching scheme between the three thefts to permit aggregation of the values of the property taken.

In reviewing the sufficiency of the evidence, " 'we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*People v. Cravens* (2012) 53 Cal.4th 500, 507.) "We must presume in support of the judgment the existence of every fact that the trier of fact could reasonably deduce from the evidence. [Citation.]" (*People v. Medina* (2009) 46 Cal.4th 913, 919.) "The conviction shall stand 'unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]." ' [Citation.]" (*Cravens, supra*, at p. 508.) The standard is the same in cases in which a conviction is based primarily on circumstantial evidence. (*People v. Clark* (2016) 63 Cal.4th 522, 625.)

Theft is divided into two degrees, grand theft and petty theft. (§ 486; *People v. Ortega* (1998) 19 Cal.4th 686, 696, overruled on another point in *People v. Reed* (2006) 38 Cal.4th 1224, 1228.) There are not separate offenses, but simply different degrees of the crime of theft. (*Ortega, supra*, at p. 696.) "The demarcation between grand and petty theft is now $950. When the value of the property taken exceeds $950, the crime is grand theft. [Citations.]" (*People v. Rader* (2014) 228 Cal.App.4th 184, 199; § 487, subd. (a).) "Theft in other cases is petty theft." (§ 488; *People v. Romanowski* (2017) 2 Cal.5th 903, 908.)

A. *Defendants' convictions for grand theft based upon the third incident is supported by substantial evidence*

A defendant may be convicted of grand theft upon evidence proving " '(a) embezzlement, (b) larceny or (c) obtaining property under false pretenses. . . .' " (*People v. Hunter* (1957) 147 Cal.App.2d 472, 475.) "The elements of theft by larceny are well settled: the offense is committed by every person who (1) takes possession (2) of

4

personal property (3) owned or possessed by another, (4) by means of trespass and (5) with intent to steal the property, and (6) carries the property away.  [Citations.]"  (*People v. Davis* (1998) 19 Cal.4th 301, 305.)  Grand theft by larceny requires asportation.  (*People v. Williams* (2013) 57 Cal.4th 776, 787.)

Asportation requires the property be (1) severed from the possession of the true owner; (2) in the complete possession of the thief; and (3) moved, however slightly.  (*People v. Shannon* (1998) 66 Cal.App.4th 649, 654 (*Shannon*); *People v. Edwards* (1925) 72 Cal.App. 102, 114-115, disapproved on another point in *In re Estrada* (1965) 63 Cal.2d 740, 748.)  "Asportation within the meaning of the statute prohibiting theft may be fulfilled by wrongfully and unlawfully removing property from the possession or control of the owner, against his will with the intent to steal it, even though the property may be retained by the thief but a moment.  [Citations.]  The fact that the thief is frustrated in his attempt to carry stolen property away . . . does not relieve him of the consequence of the theft."  (*People v. Quiel* (1945) 68 Cal.App.2d 674, 679.)  Put another way, where the defendant takes possession of the property with the intent to steal it, and moves it around a store, the theft is complete.  That the defendant was unsuccessful in removing the property from the store, whether through frustration of purpose or a change of his mind, does not absolve the defendant of liability for the theft.  (*People v. Tijerina* (1969) 1 Cal.3d 41, 47; *Quiel, supra*, at p. 679; see *In re Aaron J.* (2018) 22 Cal.App.5th 1038, 1059.)

Farris argues there is not substantial evidence supporting the grand theft conviction as to the third incident because neither he nor Kruckenberg left the store with the merchandise, and there was only a speculative inference that they had the requisite intent when they took possession of the property.  And, he contends, this case is "vastly different" from other "asportation" cases, as there was no evidence either defendant "took the step of actively attempting to deprive the store of its money by exchanging merchandise they had never bought for cash or trying to hide merchandise to pay less

5

than what it was worth." Accordingly, he argues no rational juror could find that they intended to commit a taking with the requisite intent.

Contrary to Farris's argument, his case is not that different from other asportation cases. From two cases, *Shannon, supra*, 66 Cal.App.4th 649, and *People v. Khoury* (1980) 108 Cal.App.3d Supp. 1 (*Khoury*), Farris attempts to engraft a requirement onto the asportation element, i.e., that the defendant must hide or conceal the property in order to satisfy the element of asportation, or receive money in a wrongful refund exchange. Farris reads too much into these cases.

In *Shannon*, the defendant entered a department store, took clothes from a rack, hid them in a bag, and went to the cashier. Store personnel had seen defendant hide the clothes and knew he had taken them from the rack. The defendant asked the cashier to exchange the clothing for a cash refund. The cashier complied and the defendant was apprehended as he left the store. (*Shannon, supra*, 66 Cal.App.4th at p. 652.) The court held the theft by larceny was complete when the defendant dropped the clothes in the bag with the intent to falsely exchange them for monetary value. (*Id.* at pp. 655-656.)

In *Khoury*, the defendant was observed for several hours pushing a cart around a store. He eventually pushed the cart with a large chandelier box on it to a checkstand. The cashier noticed the box was loosely taped and said he would have to open the box and check its contents before allowing the defendant to pay the marked price and remove the box from the store. The defendant abruptly left the checkstand and walked back into the store, leaving the box with the cashier. The defendant was arrested by security personnel after the box was opened and store officials found more than $900 worth of batteries, tools, and chainsaws, but no chandelier. (*Khoury, supra*, 108 Cal.App.3d Supp. at p. 3.)

In both cases, the surrounding circumstances, which included the facts of concealment and wrongful refund, provided evidence of the defendant's intent to steal the merchandise. But the cases did not *require* those facts to establish the intent to steal.

6

Rather, the cases held only that asportation requires a defendant to take possession of the property and move it slightly with the intent to deprive the owner of it permanently. (*Shannon, supra*, 66 Cal.App.4th at p. 654; *Khoury, supra*, 108 Cal.App.3d Supp. at p. 4.)

As in *Shannon* and *Khoury*, here, the intent to steal may be inferred from the surrounding circumstances (*People v. Dukes* (1936) 16 Cal.App.2d 105, 109; *People v. Thompson* (1958) 158 Cal.App.2d 320, 323; *People v. Buonauro* (1980) 113 Cal.App.3d 688, 692), and defendants' pattern of conduct, which give rise to reasonable inferences about their intent. Two times before, within a week, which included once earlier on August 5, defendants went to the same store, walked around together, and put vacuums, small appliances, and other items in a shopping cart. Kruckenberg pushed the cart with Farris alongside, adding items to the cart. Both times, Kruckenberg bypassed the checkout area, pushed the cart past the café, and left the store without paying for the merchandise. These acts provided circumstantial evidence of defendants' intent when, for the third time, they went into the store together, with Kruckenberg pushing a shopping cart around, while they put a vacuum cleaner and small appliances in the cart, walked past the café and checkout area, and headed toward the exit without paying for the merchandise. (See *People v. Robbins* (1988) 45 Cal.3d 867, 879 [as to the admissibility of prior misconduct, "[w]e have long recognized 'that if a person acts similarly in similar situations, he probably harbors the same intent in each instance' "]; see also Evid. Code, § 1101, subd. (b).) When Demar asked for Kruckenberg's receipt, he claimed he was still shopping, turned away from the exit, and went back into the store. But Kruckenberg and Farris did not, in fact, continue shopping. Rather, they abandoned the cart in the store, and left without purchasing anything. It is reasonable to infer from this conduct that upon being confronted by the security guard, and understanding they were being watched, they abandoned their plan to steal the merchandise. The surrounding circumstances give rise to the reasonable inference that defendants intended to steal the items in the cart when

7

they took possession of them and moved them around the store. There was substantial evidence supporting a grand theft conviction based solely on the third incident.

### B. *Aggregation of the thefts was appropriate*

Farris contends there was not substantial evidence of an overarching plan to steal property so as to allow the jury to aggregate the thefts to meet the grand theft threshold. We again disagree. "[W]here a number of takings, each less than [the threshold dollar amount for grand theft,] but aggregating more than that sum, are all motivated by one intention, one general impulse, and one plan, the offense is grand theft." (*People v. Bailey* (1961) 55 Cal.2d 514, 519 (*Bailey*); see CALCRIM No. 1802.)[2] "The question of whether multiple takings are committed pursuant to one intention, general impulse, and plan is a question of fact for the trier of fact based on the particular circumstances of each case. [Citation.]" (*People v. Nilsson* (2015) 242 Cal.App.4th 1, 13.)

Evidence of a defendant's state of mind is often circumstantial, but circumstantial evidence is sufficient to support a conviction. (*People v. Bloom* (1989) 48 Cal.3d 1194, 1208.) "[T]he following types of evidence are relevant in determining whether a defendant acted pursuant to a single intent in committing a series of thefts: whether the defendant acted pursuant to a plot or scheme [citations]; whether the defendant stole a defined sum of money or particular items of property [citation]; whether the defendant committed the thefts in a short timespan [citation] and/or in a similar location [citation]; and perhaps most significantly, whether the defendant employed a single method to commit the thefts." (*People v. Jaska* (2011) 194 Cal.App.4th 971, 984-985.)

These defendants employed a single method to commit all three thefts. Each time they walked into the same retail store together, filled a cart, and rolled the cart out of the

---

[2]    Farris also challenges the propriety of CALCRIM No. 1802 and the continuing validity of *Bailey*. We are not persuaded by these contentions and address them in part II below.

store without paying for the merchandise. Each time they stole vacuum cleaners and small appliances. They committed the offenses close in time, with two of the offenses being committed on one day. That is, in the span of one week, defendants (1) went to the same store, (2) took the same type of merchandise; and (3) used the same method to take the merchandise. The jury reasonably could find that defendants' conduct was part of a single plan and a single intent. Accordingly, substantial evidence supports the jury's verdict of grand theft based on aggregating the amounts of the thefts.

## II

### *Jury Instructions*

Farris contends the trial court violated his due process rights by instructing the jury with CALCRIM No. 1802[3] over his objection, because it misstated the law of theft. CALCRIM No. 1802 follows the holding in *Bailey*, and allows the jury to aggregate multiple petty thefts to reach the grand theft threshold if the thefts were committed against one victim pursuant to a single plan. Farris contends on appeal, as he did at the trial court, that Proposition 47, the Safe Neighborhoods and Schools Act, changed the law of theft and made it improper to base a finding of grand theft on the aggregate amount of multiple takings. He argues neither the amendments added by Proposition 47, adding a shoplifting offense, or the statute defining grand theft, explicitly provide for aggregation of the value of items taken in the shoplifting context.

---

[3] CALCRIM No. 1802, as given, provides: "If you conclude that the defendants committed more than one theft, you must then decide if the defendant[s] committed multiple petty thefts or a single grand theft. To prove that the defendants are guilty of a single grand theft, the People must prove that: One, the defendant[s] committed theft of property from the same owner or possessor on more than one occasion; two, the combined value of the property was over $950; [and, three,] the defendants obtained the property as part of a single[,] overall plan or objective. [¶] If you conclude that the People have failed to prove grand theft, any multiple thefts you have found proven are petty thefts."

9

We determine whether a jury instruction is a correct statement of law under the independent or de novo standard of review. (*People v. Posey* (2004) 32 Cal.4th 193, 218.) " 'Review of the adequacy of instructions is based on whether the trial court "fully and fairly instructed on the applicable law." ' [Citation.]" (*People v. Turner* (2019) 37 Cal.App.5th 882, 887.)

In *Bailey*, the defendant made a misrepresentation to the welfare office and received a series of payments to which she was not entitled. The payments totaled an amount that satisfied the threshold for charging grand theft. (*Bailey, supra*, 55 Cal.2d at pp. 515-516, 518-519.) The Supreme Court concluded that a single conviction of grand theft was proper, holding: "[W]here a number of takings, each less than [the threshold dollar amount for grand theft] but aggregating more than that sum, are all motivated by one intention, one general impulse, and one plan, the offense is grand theft." (*Id.* at p. 519.) The court went on to state, "Whether a series of wrongful acts constitutes a single offense or multiple offenses depends upon the facts of each case, and a defendant may be properly convicted upon separate counts charging grand theft from the same person if the evidence shows that the offenses are separate and distinct and were not committed pursuant to one intention, one general impulse, and one plan. [Citation.]" (*Ibid*.)

Based on that language in *Bailey,* numerous Courts of Appeal have held that *Bailey* not only allowed aggregation, but barred multiple grand theft convictions when the individual thefts arose from a single plan or scheme, even though each theft was separate and distinct and involved property exceeding the amount needed to establish grand theft. (*People v. Whitmer* (2014) 59 Cal.4th 733, 735, 739.) In *Whitmer*, the defendant arranged the fraudulent sale of 20 vehicles, each valued at over $9,000. Thus, each theft was individually over the threshold amount for grand theft. (*Whitmer, supra*, at p. 735.) The *Whitmer* court explicitly clarified the meaning of the language in *Bailey* and held that "a serial thief should not receive a ' "felony discount" ' if the thefts are

10

separate and distinct even if they are similar.  Accordingly, we conclude that a defendant *may* be convicted of multiple counts of grand theft based on separate and distinct acts of theft, even if committed pursuant to a single overarching scheme."  (*Whitmer,* at pp. 740-741, italics added.)  *Whitmer* did not consider the issue presented here of aggregating multiple petty thefts committed pursuant to a single scheme into a single grand theft.

Later in 2014, voters enacted Proposition 47, the Safe Neighborhoods and Schools Act, which reduced the penalties for certain theft and drug offenses by amending existing statutes and by adding several new provisions.  (*People v. Gonzales* (2017) 2 Cal.5th 858, 863.)  As relevant here, Proposition 47 added section 490.2, which provides, in part: "Notwithstanding Section 487 or any other provision of law defining grand theft, obtaining any property by theft where the value of the money, labor, real or personal property taken does not exceed nine hundred fifty dollars ($950) shall be considered petty theft and shall be punished as a misdemeanor . . . ."  (§ 490.2, subd. (a).)  Neither section 487, subdivision (a), nor section 490.2 address aggregation.

Farris relies on *People v. Salmorin* (2016) 1 Cal.App.5th 738 (*Salmorin*) to support his claim that the values of the property taken cannot be aggregated to determine whether the theft exceeded $950.  In *Salmorin*, the court concluded that the value of forged checks could not be aggregated to deny resentencing relief under section 473, subdivision (b).  (*Salmorin, supra*, at p. 745.)  In reaching this conclusion, the court relied on the plain language of section 473, subdivision (b), which "provides that 'any person who is guilty of forgery relating to a check, . . . where the value of the check . . . does not exceed [$950], shall be punishable by imprisonment in a county jail for not more than one year.'  [Citation.]  In referring to '*a* check' and 'the value of *the* check,' the language of the statute distinguishes misdemeanor forgery from felony forgery based on the value of any single check the person is guilty of forging, not the aggregate value of two or more checks."  (*Salmorin*, at p. 746.)

11

*Salmorin* relied on the principle stated in *People v. Neder* (1971) 16 Cal.App.3d 846, 851-853, that the *Bailey* doctrine was developed for the crime of theft, and does not apply to forgery and other nontheft offenses. (*Salmorin, supra*, 1 Cal.App.5th at p. 749.) The *Neder* court explained the reason for this distinction: "The essential act in all types of theft is taking. If a certain amount of money or property has been taken pursuant to one plan, it is most reasonable to consider the whole plan rather than to differentiate each component part. [Citation.] The real essence of the crime of forgery, however, is not concerned with the end, i.e., what is obtained or taken by the forgery; it has to do with the means, i.e., the act of signing the name of another with intent to defraud and without authority, or of falsely making a document, or of uttering the document with intent to defraud. Theft pursuant to a plan can be viewed as a large total taking accomplished by smaller takings. It is difficult to apply an analogous concept to forgery." (*Neder, supra*, at pp. 852-853.)

*Salmorin* does not help Farris. First, the statute at issue in *Salmorin* explicitly defined misdemeanor forgery based on the value of a single check. (*Salmorin, supra*, 1 Cal.App.5th at p. 746.) By contrast, the plain language of sections 490.2, subdivision (a) and 484 do not limit the definition of grand theft to the value of a single item. In addition, the *Bailey* doctrine does not apply to forgery offenses. The doctrine was explicitly created in the context of theft, and as noted by *Neder*, given the nature of each offense, there are sound reasons for distinguishing between forgery and theft offenses for this purpose.

Finally, Farris argues that with respect to Proposition 47 and the petty theft statute (§ 490.2), "the drafters and voters knew how to aggregate the value of multiple items taken at different times to increase a petty theft under section 490.2 to grand theft, but chose not to use that approach." In support of this argument, Farris relies on section 476a, subdivision (b), which pertains to the punishment for passing a check with

12

insufficient funds, and *People v. Salmorin, supra*, 1 Cal.App.5th 738, interpreting Proposition 47 in the context of forgery.

The flaw in this reasoning is that the amendment to section 476a, subdivision (b) only raised the felony threshold amount from $450 to $950. It did not add or delete language regarding aggregation; that already was part of the statute. (See former § 476a, Stats. 2012, ch. 43, § 19 (Sen. Bill No. 1023), eff. June 27, 2012.) Hence, the law of aggregation was left unchanged.

Farris has provided us with no authority and no compelling reason why we should conclude the drafters and voters intended to change the long-standing law with regard to aggregation of amounts as to grand theft in section 487. The principle articulated in *Bailey* is that where a number of takings, committed pursuant to a single scheme or plan, are each less than the felony grand theft amount, but aggregated reached that amount, the offense is grand theft. (*Bailey, supra*, 55 Cal.2d at p. 519.) "The electorate 'is presumed to be aware of existing laws and judicial construction thereof.' [Citation.]" (*People v. Gonzales, supra*, 2 Cal.5th at p. 869.) There is nothing in the statutes or Proposition 47 that indicates an intent to change existing law regarding aggregation under the *Bailey* doctrine, or that when committed pursuant to a single plan, a grand theft may be based on a series of petty thefts. We therefore conclude that Proposition 47 did not overrule *Bailey*. Accordingly, CALCRIM No. 1802 remains a correct statement of law and the trial court did not err in instructing the jury with it.

### III

### *Senate Bill No. 136*

In October 2019, the Governor signed Senate Bill No. 136 (2019-2020 Reg. Sess.) (Senate Bill 136), which amended section 667.5, effective January 1, 2020 (Stats. 2019, ch. 590, § 1). Senate Bill 136 narrowed eligibility for the one-year prior prison term enhancement to those who have served a prior prison sentence for a sexually violent offense, as defined in Welfare and Institutions Code section 6600, subdivision (b).

(§ 667.5, subd. (b).)  The amendment applies "retroactively to all defendants whose judgments are not yet final as of that date."  (*People v. Petri* (2020) 45 Cal.App.5th 82, 94.)

As the People concede, both defendants are entitled to have the one-year prior prison term enhancements stricken.  Defendants' cases were not yet final on Senate Bill 136's effective date.  In addition, their prior prison term enhancements were not based on prior terms for sexually violent offenses.

With respect to Farris, because the trial court imposed the maximum term, we need not remand the matter for resentencing.  (*People v. Francis* (2017) 16 Cal.App.5th 876, 887 [remand unnecessary where court could not alter sentence to compensate for the loss of enhancements].)  As to Kruckenberg, because the trial court imposed the lower term at sentencing, it is appropriate to remand this matter for resentencing to allow the trial court to revisit its sentencing choices in light of the changed circumstances.  (See *People v. Jennings* (2019) 42 Cal.App.5th 664, 682 [remanding for resentencing following striking of enhancements in light of Senate Bill 136].)

IV

*Ability to Pay Fines and Assessments Hearing*

In supplemental briefing, relying on *People v. Dueñas* (2019) 30 Cal.App.5th 1157, Kruckenberg[4] argues due process requires that we strike the fines and assessments

---

[4]　　Farris did not file a supplemental brief or raise a *Dueñas* claim in any briefing.  In his opening brief, he stated he was incorporating by reference arguments made by Kruckenberg in his opening brief, to the extent they were applicable and accrued to his benefit.  (Cal. Rules of Court, rule 8.200(a)(5).)  Since Kruckenberg had not yet filed his opening brief, Farris could not identify such arguments with specificity, as required.  (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 363-364.)  Farris stated he would specifically identify any arguments he wished to join in his reply brief or supplemental opening brief.  He did not do so.  Accordingly, he has not joined in this argument and it is forfeited as to him.  (*Ibid.*)

14

imposed or remand the matter for a hearing on his ability to pay them. Kruckenberg concedes that he did not object to the imposition of the fines and assessments, even though he was sentenced five months after *Dueñas* was decided. We decline Kruckenberg's invitation to excuse his failure to object and instead conclude he has forfeited the issue on appeal.[5]

DISPOSITION

The trial court is directed to strike defendants' prior prison term enhancements. In all other respects, the judgment is affirmed. With respect to defendant Farris, the trial court shall prepare an amended abstract of judgment reflecting his new sentence and forward a certified copy to the Department of Corrections and Rehabilitation. As to defendant Kruckenberg, the matter is remanded for resentencing. Upon resentencing, the trial court is directed to prepare an amended abstract of judgment and to forward a certified copy to the Department of Corrections and Rehabilitation.


                                                                               KRAUSE             , J.


We concur:


     RAYE           , P. J.


     BLEASE         , J.

---

[5]    Even if defendant had preserved the issue for appeal, his arguments would be meritless because we would join the courts that have concluded that *Dueñas* was wrongly decided. (See, e.g., *People v. Kingston* (2019) 41 Cal.App.5th 272; *People v. Hicks* (2019) 40 Cal.App.5th 320, review granted Nov. 26, 2019, S258946; *People v. Aviles* (2019) 39 Cal.App.5th 1055; *People v. Caceres* (2019) 39 Cal.App.5th 917, 923-929.)